## Appeals of D. W. COWDEN and GEORGE R. COWDEN.

Docket Nos. 2605, 2606.    Submitted November 10, 1925.    Decided February 17, 1926.

1. Commissioner's method of determining gain on sale of shares of stock approved.

2. Shares of stock sold in 1919 had a fair market value of $100 each at March 1, 1913.

*Phil D. Morelock* and *Dudley Doolittle, Esqs.,* for the taxpayers.
*Robert A. Littleton, Esq.,* for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

Each of these appeals is from a determination of a deficiency in income taxes for the year 1919. The amounts in controversy are $11,627.03 and $6,234.93 as to D. W. Cowden and George R. Cowden, respectively. In each case the asserted deficiency results from the Commissioner's inclusion in gross income of gain found to have been realized from the sale of shares of stock of a corporation. On motion of counsel the two appeals were consolidated and heard together.

FINDINGS OF FACT.

In the year 1919 D. W. Cowden owned 1,300 shares of the par value of $100 each of the H. D. Lee Mercantile Co., hereinafter designated as the corporation. He acquired 100 shares of such stock in 1889, when the corporation was organized, and the remainder at various dates prior to the taxable year here involved. All such shares were bought either from H. D. Lee, the president and principal stockholder of the corporation, from the corporation at the several dates when the authorized capitalization was increased by

corporate action, or from other stockholders who were unable to take up their allotments or increases in authorized capital in proportion to their prior holdings. He paid the par value for the entire 1,300 shares. On March 1, 1913, he owned 750 shares. In the year 1919 he received a stock dividend in the amount of 557.05 shares, thereby increasing his total holdings to 1,857.05 shares. In the year 1919, prior to receiving the stock dividend but subsequent to the declaration thereof, he sold 1,300 shares for $130,000. He reported no gain from such sale in his income-tax return for that year.

In 1919 George R. Cowden owned 900 shares of the corporation, which he had acquired at various dates between the years 1900 and 1919. He bought this stock from Lee, from minor stockholders, and from the corporation when additional shares resulting from increases in authorized capital were issued. He owned 263 shares on March 1, 1913. In all cases he paid the par value for such shares. In 1919 he received a stock dividend in the amount of 385.65 shares, and in the same year, at some date subsequent to the declaration of the stock dividend but prior to his receipt of the certificates, he sold 900 shares and received therefor the par value for 794 shares and $115 per share for the remaining 106 shares. In the same year he sold 59 shares of the stock received by way of dividend for $115 a share. In his income-tax return for 1919 he included as gains realized during the taxable year the difference between the cost at par of the 106 shares and the $115 per share received therefor, and also the total of $6,785 received from the sale of the 59 dividend shares.

The corporation was organized about 1889 by H. D. Lee and D. W. Cowden. The original authorized capital was $100,000, divided into shares of the par value of $100 each, of which Lee owned 75 per cent. As the business of the corporation developed, the capitalization was increased from time to time. Between January 1, 1908, and March 27, 1912, the outstanding capital stock was 5,000 shares of the par value of $100 each, and on the latter date was increased to 8,000 shares of the same par value, and so remained until after March 1, 1913. From 1889 until after 1910 the stock of the corporation was somewhat closely held by the founders and its officers and employees, but some shares were owned by customers and others not directly participating in the management or operation. In 1916 the corporation increased its capitalization and issued a large number of new shares, which were offered and sold to the public and to prior owners of stock at par.

During the five years preceding 1913 the corporation was prosperous and paid regular dividends ranging from 6 per cent to 20 per cent and averaging 15.6 per cent. Its books show the follow-

ing gains, undivided profits, and dividend payments in the years 1908 to 1912, inclusive:

| Loss and gain account—Gain. | | Undivided profits. | | Dividends paid. | |
|---|---|---|---|---|---|
| 1908 | $29, 152. 14 | | | 1908 | $50, 000 |
| 1909 | 89, 710. 33 | Jan. 1, 1909 | $9, 993. 22 | 1909 | 40, 000 |
| 1910 | 100, 568. 85 | Feb. 15, 1910 | 98, 885. 69 | 1910 | 50, 000 |
| 1911 | 77, 701. 96 | Jan. 1, 1911 | 58, 093. 46 | 1911 | 50, 000 |
| 1912 | 68, 093. 43 | Jan. 1, 1912 | 99, 424. 54 | | |
| | | Feb. 15, 1912 | 77, 107. 96 | 1912 | 50, 000 |
| | | Mar. 27, 1912 | 22, 873. 50 | 1912 | 150, 000 |

The balance in the undivided profits account of the corporation at January 1, 1912, was $99,424.54. On February 15, 1912, this was increased by a credit in the amount of $77,107.56, which represents the net earnings from the year 1911, and on that date a cash dividend in the amount of $50,000 was declared. On March 27, 1912, two additional items, in the total amount of $22,873.50, the sources of which are not disclosed by the record, were credited to this account, and on the same date an additional cash dividend in the amount of $150,000 was declared.

The stock of the H. D. Lee Mercantile Co. had a fair market value of $100 per share on March 1, 1913.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LANSDON: In support of their allegations in this appeal the taxpayers raise two issues which must be determined before their tax liability for the year 1919 can be ascertained: (1) That the Commissioner used an incorrect method in ascertaining the gain realized from their sales of stock in 1919, and (2) that even if the Commissioner's method of computing such gain is correct the result is erroneous, because the fair market price or value of the shares of the corporation exceeded the par value at March 1, 1913.

On January 1, 1919, D. W. Cowden owned 1,300 shares of the capital stock of the corporation, which he had bought at par. He had acquired 750 of such shares prior to March 1, 1913. In the year 1919 he received a stock dividend in the amount of 557.05 shares. In the same year, and subsequent to the declaration of the stock dividend, he sold 1,300 shares for $130,000. On January 1, 1919, George R. Cowden owned 900 shares of the corporation, which he had acquired at par. He owned 263 of these shares on March 1, 1913. In the year 1919 he received a stock dividend in the amount

of 385.65 shares. For the purpose of arriving at a basis for determining gain on these transactions the Commissioner computed the cost of the whole number of shares owned by each of the taxpayers after receipt of stock dividend by applying the method or formula set forth in article 1547 of Regulations 45. Having ascertained that the cost of the taxpayer's stock and the fair market price or value of the shares owned at March 1, 1913, were identical, he divided the amount so paid, which was $130,000 in the case of D. W. Cowden and $90,000 in the case of George R. Cowden, by the whole number of shares owned by each after the declaration of the stock dividend, and multiplied the resulting quotients by 1,300 and 900, and thereby found that the cost of the shares sold by D. W. Cowden and George R. Cowden during the year in question was $91,004.55 and $67,133.35, and that the resulting gains from such sales were $38,995.45 and $31,241.63, respectively.

The taxpayers' first contention is that the cost of the shares sold by them in 1919 was $130,000 and $90,000, respectively, and that no taxable gains resulted from the sales. We are unable to agree with this conclusion. Before the declaration of the stock dividend the taxpayers had certain inchoate interests in the assets of the corporation. The declaration and distribution of such dividend neither increased nor decreased their interests. The dividend shares after issue were indistinguishable from the old shares, either legally or in the market sense. The only result of the declaration and distribution of the stock dividend was that each of the taxpayers, in common with all other stockholders, had a larger number of shares evidencing his ownership of unchanged interest in the assets of the corporation. It follows, therefore, that the cost of each share, either before or after the distribution of the stock dividend, must be found by dividing the cost of all by the whole number of shares involved. *Eisner* v. *Macomber*, 252 U. S. 189; *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247; *Towne* v. *McElligott*, 274 Fed. 960.

The taxpayers further contend that they sold their original purchases of stock before they received the stock dividends and prior to their ownership of the shares evidencing such distribution, and that the time at which such sales were made enables them to identify the property sold as the identical shares which theretofore had been purchased for $100 each, which they assert is the correct basis for computing the gains resulting from the sales in question. In our opinion this position is untenable. It is refuted by the taxpayers' admission that they received and sold the stock-dividend shares. If they had sold their shares acquired by purchase prior to the declaration of the stock dividend, in the absence of any contract other-

wise they would have parted with the right to such dividends. Furthermore, it is a well-established rule that the right to receive stock dividends vests in all stockholders of record from the moment of the declaration of such dividends. Fletcher on Corporations, section 3681, p. 6123. The Commissioner's method of computing gain from the transactions that are the basis of this appeal must be approved.

The second issue raised by the taxpayers is that on March 1, 1913, the shares of the corporation had a fair market price or value greatly in excess of their par value. It appears from the testimony that there was no general market for the shares of the corporation at or about March 1, 1913. All acquisitions of stock by purchase from the corporation, from Lee, or from the minority stockholders were at $100 a share. One of the taxpayers bought 30 shares from a customer of the corporation for $100 a share and testified at the hearing that the vendor of the shares believed them to be worth much more than par. Obviously such testimony does not prove a fair market price or value in excess of par. It is true that the stock of the corporation was somewhat closely held prior to 1916, but there is nothing in the record to indicate that there was any legal bar to prevent any stockholder from selling any or all of his shares at any price agreed to between himself and any willing purchaser. There was nothing more than a sort of general understanding or gentlemen's agreement that shares for sale should first be offered to Lee, and, in the event of his failure to purchase, thereafter to other shareholders at par. As all the sales of shares at or about March 1, 1913, as well as for many years both prior and subsequent to that date, were made at par, the Board is of the opinion that no greater value based on sales has been proved by the testimony offered in behalf of the taxpayers.

The taxpayers, however, do not rely on sales of shares to sustain their allegation that the stock of the corporation had a fair market price or value greater than par at March 1, 1913. Their contention is that the stock was so closely held and that transfers were subject to such actual, if not legal, restrictions that no fair market value had been established, or could be established, by such limited sales as were made from time to time. They seek to support their allegation of value by proving (1) that for five years preceding March 1, 1913, the corporation had average annual net earnings in the amount of $73,045.35, and (2) that during all such years, even after the declaration of dividends that averaged 15.6 per cent of the par value of the outstanding capital stock, the corporation owned assets, reflected in its surplus account, greatly in excess of the par value of its issued shares.

For the purpose of proving a substantial earning power and value of intangibles or good will, and thereby establishing a fair market price or value at March 1, 1913, the taxpayers rely on a statement from the books of the corporation, which was in evidence at the hearing, setting forth the undivided profits, the net annual earnings, and the annual distribution of dividends for the years 1908–1912, inclusive. During such years the average outstanding stock was $560,000, the average net earnings were $73,045.35, and the average dividends declared and paid were 15.6 per cent of the issued shares. Assuming that 10 per cent per annum is a fair return on tangibles, the taxpayers allocate all earnings in excess of that rate to intangibles, and thereby arrive at the conclusion that the good will of the corporation so capitalized increased the value of the shares to $130 each. In the absence of sales, this may be a satisfactory method for determining the value of good will, but the sale price of shares of stock is affected by so many other conditions that we can not accept this result as conclusive in establishing the value asserted by the taxpayers in the face of the evidence of actual sales.

The net earnings of the corporation were large, but it is in evidence that much of such profits was distributed as cash dividends from year to year, and that in March, 1912, such a distribution not only exhausted the surplus available for dividends, but caused a deficit of $22,873.50 and an actual impairment of capital assets that reduced the book value of the shares below par. At March 1, 1913, the only possible surplus of the corporation was represented by the net earnings that had accumulated after March 27, 1912, less the amount of $22,873.50. Even if book value is a proper basis for determining fair market price or value, the shares of the corporation had such value little, if any, in excess of par at March 1, 1913. We know of no law or business practice, however, under which it can be held that market price or value of shares is determined solely by their book value.

Analysis of earnings to determine the value of stock is helpful only in the absence of better evidence, and can not be relied upon solely and with complete disregard of the price at which sales have been made. Actual sales reflect fair market price or value, and this we can not ignore, even if the application of a formula, theoretical at least, would result in a higher figure. In the appeal at bar we have clear evidence of actual sales at par, and therefore there is no reason for the use of a formula to determine fair market price or value at March 1, 1913. In view of the facts that all the stock purchased by the taxpayers was acquired at various dates over long periods of time, both before and after March 1, 1913, at a uniform

price of $100 a share, and that as a matter of corporation policy annual dividends absorbed practically all net earnings and kept book value and par value of the shares substantially the same at all times, we must hold that the proof of intangible or good will value adduced to sustain the taxpayers' allegations in this appeal is not sufficient to establish a fair market price or value in excess of par at March 1, 1913.