COMMONWEALTH IMPROVEMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24959. Promulgated October 8, 1930.

*Ellis Ames Ballard, Esq., William R. Spofford, Esq.,* and *Schofield Andrews, Esq.,* for the petitioner.

*John D. Foley, Esq.,* for the respondent.

OPINION.

PHILLIPS: Petitioner makes the following contentions: (1) That it and the estate of P. A. B. Widener (hereafter referred to as the estate) are one and the same entity and neither gain nor loss can result from transactions between them, and (2) that the March 1, 1913, value as a basis for determining gain or loss upon the stock sold by petitioner should not be affected or decreased by the exercise of stock rights at a subsequent date.

While the petitioner does not present any argument upon the second point, some explanation is necessary to understand the manner in which the controversy arises. In 1911 or 1912 petitioner acquired 225,000 shares of the stock of British-American Tobacco Co. at a cost of $3,966,002. On March 1, 1913, these shares had a value of $5,315,625. In 1919 the petitioner received stock rights which it exercised, acquiring 75,000 additional shares at a cost of $326,437.50. In 1920 it sold 225,000 shares to the estate for $5,287,500, which was their market value on the date of sale. Upon its income-tax return petitioner claimed a loss of the difference between the selling price and a March 1, 1913, value of $5,315,625. The Commissioner made the following adjustment in the cost or March 1, 1913, value:

| | |
|---|---|
| 225,000 shares, March 1, 1913, value | $5,315,625.00 |
| 75,000 shares, acquired on exercise of stock rights for | 326,437.50 |
| 300,000 shares | 5,642,062.50 |
| 1 share | 18.806875 |
| 225,000 shares | 4,231,560.88 |

The application of the averaging method of computing the cost basis for determining gain or loss on the sale of stocks with respect to which there have been stock dividends or subscription rights has been approved by the courts and this Board in *Miles* v. *Safe Deposit Co.*, 259 U. S. 247, and *Frederick Ayer*, 6 B. T. A. 152, aff'd., 25 Fed. (2d) 534. By reason of the application of this principle the Commissioner has determined that there was a profit to petitioner of $1,055,953.12 on the sale of this stock instead of a loss of $28,125 as claimed by petitioner upon its return. The petitioner does not now argue before the Board that the method of computing the gain was incorrect, but relies entirely upon its contention that the corporation and the estate are the same entity. If this contention were logically applied it would follow that all income received by the

**1194**

corporation since its organization was properly taxable as income of P. A. B. Widener and his estate and should have been added to any other income which Widener and his estate received during these years and taxed at the rates applicable to individuals rather than returned by the petitioner and taxed at the rates fixed for corporations. For the purposes of inheritance and transfer taxes imposed by the various States upon the transfer of the stocks owned by petitioner the corporate entity should have been disregarded upon the death of Widener and these stocks subjected to whatever taxes would have been payable had they been owned by the decedent. But petitioner does not seek to carry its contention to such a conclusion. Having enjoyed the benefits which resulted from its separate existence, it seeks to perpetuate those benefits and asks that the separate existence and tax liability of the petitioner and its single stockholder be overlooked only with respect to transactions which take place between them. That this is an afterthought is plainly evidenced by the action of petitioner in claiming a deduction upon this same transaction when it believed a deductible loss had been sustained.

Stress is laid upon the purpose for which petitioner was created. It seems to us immaterial whether the purpose was to avoid inheritance and transfer taxes or to permit the entire estate of decedent to stand as security for the endowment of the Charity in which decedent was interested. " What was done, rather than the design and purpose of the participants, should be the test," *United States* v. *Phellis*, 257 U. S. 156. If we are mistaken and the purpose is of importance, it may be pertinent to note that this second purpose had been entirely avoided by the time the transaction with which we are dealing took place. The trustees of the estate had convinced the trustees of the Charity that mortgage bonds were as desirable as the debenture bonds issued by petitioner and the Charity had exchanged such debentures. Neither of the purposes mentioned above justified the continued separate existence of petitioner at the time the stock here in question was sold and some other reason must have existed for its continuance. As we have said before, the reason seems immaterial. The fact is that petitioner did have a separate legal existence with privileges and obligations entirely separate from those of its stockholders. The fact that it had only one stockholder seems of no legal significance. *Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U. S. 333.

Under the facts set forth in our findings of fact we are asked to look through the form to the substance, to disregard the corporate entity and to hold that the estate was in fact the owner of the stock of the British-American Tobacco Co. In support of this contention petitioner relies upon *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, and *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71. In these cases

the Supreme Court held that taxable income did not result from what they termed in the first case a "paper" and in the second case a "bookkeeping" transaction. Here we have no mere book-keeping or paper transaction, but the actual transfer of securities and the payment of a debt. The situation is not unlike those presented in *United States* v. *Phellis, supra*, and *Rockefeller* v. *United States*, 257 U. S. 176. In each of those cases it was held that stockholders of a corporation received taxable income although after the transaction the stockholders held the same equities in the same properties as before. In the instant case the petitioner may have been no richer after the transaction than before, but the same is true of every transaction in which one sells property for its then value. It is because one sells property for more than its cost that a taxable gain results. Here petitioner sold property for more than its cost and after the transaction it had something different from that which it had before. That the transaction was with the estate which owned all its capital stock is not material unless we are not to regard the separate entities of a corporation and its stockholders in transactions between them. That such is not the law seems settled by the cases cited.

Petitioner cites decisions which it is said disregard the separate entities where necessary to prevent fraud or injustice. *Rubay Co.*, 9 B. T. A. 133; *Franklin Q. Brown*, 9 B. T. A. 965. An analysis of those cases will, we believe, disclose that separate entities were not disregarded. In each of those cases the form of the transaction was not representative of the results accomplished and effect was given to the true situation and not to that depicted by form. Here there is no such case. Securities were sold at their market value and payment received. The form which the transaction took truly represents the transaction which took place.

The contention that the estate was neither richer nor poorer because of this transaction by reason of the ownership of the stock of petitioner is not new. It has been advanced in different forms to meet different states of facts. Thus, it has been asserted that where upon the dissolution of a corporation the stockholders received its assets in proportion to their stockholdings, no income was realized for the reason that the stockholders were at all time the owners of the assets and thus no richer in the evening than they were in the morning of the day the transaction occurred. This contention was denied in *E. C. Huffman*, 1 B. T. A. 52; *John K. Greenwood*, 1 B. T. A. 291; *Estate of D. F. Buchmiller*, 1 B. T. A. 380; *J. H. Morrow, Administrator*, 1 B. T. A. 1148; and *Joseph Joseph et al.*, 6 B. T. A. 595.

Although the estate owned all of petitioner's stock, the transfers involved were made upon the basis of the true value of the securities

exchanged and the debt extinguished and, therefore, the *bona fides* of the transaction is not challenged. Neither does this transaction constitute a capital contribution by the estate to petitioner. The estate and petitioner each received full value. The gain of petitioner arises from the sale and exchange of capital assets and is, therefore, taxable income as defined in *Eisner* v. *Macomber*, 252 U. S. 189. See *Nixon* v. *Lucas*, 42 Fed. (2d) 833.

Reviewed by the Board.

*Decision will be entered for the respondent.*