## COMMISSIONER OF INTERNAL REVENUE v. INDEPENDENT LIFE INS. CO.
### No. 5850.

Circuit Court of Appeals, Sixth Circuit.
Nov. 10, 1933.

Helen R. Carloss and J. L. Monarch, both of Washington, D. C. (G. A. Youngquist, Sewall Key, C. M. Charest, Dean P. Kimball, and Frederick C. Lusk, all of Washington, D. C., on the brief), for petitioner.

James A. Newman, of Nashville, Tenn. (Miller & Chevalier, of Washington, D. C., and Byron K. Elliott, of St. Louis, Mo., on the brief), for respondent.

Before HICKS and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

HICKS, Circuit Judge.

Petition by the Commissioner of Internal Revenue to review an order of the Board of Tax Appeals adjudging that respondent had overpaid its income taxes for the years 1923 and 1924 in the sums of $112.86 and $226.79, respectively.

Respondent is a life insurance company, and during the years 1923 and 1924 owned a twelve-story building, occupying one story and renting portions of the remainder.

The commissioner determined a deficiency in respondent's taxes for the year 1923 in

the sum of $298.97 and for the year 1924 in the sum of $1,115.65. These alleged deficiencies grew out of the following facts.

Although respondent had deducted for each year taxes, expenses, and an allowance for depreciation incurred in connection with its building, as provided in section 245 (a) (6) and (7) of the Revenue Act of 1921 (42 Stat. 261), and section 245 (a) (6, 7) of the Revenue Act 1924, 26 USCA § 1004 (a) (6, 7), it had not included in its returns of gross income for those years the rental value of the space occupied by it as required by section 245 (b) of the act of 1921, and section 245 (b) of the act of 1924 (26 USCA § 1004 (b). Section 245 (b) of the act of 1921 is printed in the margin.[1] Section 245 (b) of the act of 1924 is similar.

By the provisions of these sections, as interpreted by Article 686 of Treasury Regulation 62, under the Revenue Act of 1921, and Treasury Regulation 65, under the Revenue Act of 1924, the commissioner included in respondent's gross income $14,784.70 for 1923, and $34,400.08 for 1924, as the rental value of the space occupied by respondent in its building for those years. His action gave rise to the deficiencies complained of.

The board found that the deficiency for each year was calculated in accordance with section 245 (b) as it appears, respectively, in the Revenue Acts of 1921 and 1924, but that the requirement thereof, for the inclusion in gross income of the rental value of the space occupied by respondent in its building, violated the Constitution (article 1, § 2, cl. 3; and art. 1, § 9, cl. 4) upon the theory that a tax upon such rental value was not an income tax but a direct tax upon real estate without apportionment.

Petitioner insists that section 245 (b) of each act was constitutional and that the board was unauthorized to declare otherwise.

The court is not concerned with whether the Board of Tax Appeals was authorized to pass upon the constitutionality of these enactments. A decision by us upon that question would not decide this case. We are, however, required to consider and determine whether the decision of the board that respondent had overpaid its income taxes for the years involved was "in accordance with law." Revenue Act of 1926, ch. 27, § 1003 (26 USCA § 1226); Commissioner v. Liberty Bank & Trust Co., 59 F.(2d) 320, 324 (C. C. A. 6). In the discharge of this duty the court is called upon to determine for itself whether section 245 (b) of the acts of 1921 and 1924 respectively was a valid enactment. Smyth v. Ames, 169 U. S. 526, 18 S. Ct. 418, 42 L. Ed. 819. If it was not, the finding of the board, which may be construed as a finding that no additional tax was due, would obviously have been correct, regardless of the power of the board to pass upon the constitutionality of the act of Congress.

Prior to the Revenue Act of 1921 (ch. 136, 42 Stat. 227) life insurance companies were classed, for income tax purposes, with ordinary corporations. They were required to report income from all sources with certain minor exceptions not here important. This included income from premium receipts commonly called underwriting income. The inclusion of premium receipts in gross income was found to be unsatisfactory both to the government and to the companies because these receipts did not always represent true income. See dissenting opinion of Mr. Justice Brandeis in National Life Ins. Co. v. United States, 277 U. S. 508, 522, 523, 48 S. Ct. 591, 72 L. Ed. 968. With the approval of "Life Insurance Presidents" at their annual meeting in December, 1920, Congress provided for the assessment of income taxes against insurance companies upon a new basis, embodied in sections 243, 244 (a), 245 (a) and (b) of the Revenue Act of 1921, ch. 136, 42 Stat. 227. Section 243 provides that: "There shall be levied, collected, and paid for the calendar year 1921 and for each taxable year *thereafter upon the net income of every life insurance company* a tax as follows: * * *" (Italics ours.)

Section 244 (a) provides that the term "gross income" means the gross amount of income received during the taxable year from *interest, dividends and rents.* (Italics ours.) Section 245 (a) provides the method for the determination of "net income." The pertinent provisions of sections 243, 244 (a) and 245 (a) are similar in the acts of 1921 and 1924, respectively (Revenue Act 1924, §§ 243, 244 (a), 245 (a), 26 USCA §§ 1003 (a), 1004 (a), and § 1001 note). In determining, therefore, whether the rental value of the space occupied by the life insurance company in its own building should be included in the return of gross income, an accurate concep-

[1] "Sec. 245. (b) No deduction shall be made under paragraphs (6) and (7) of subdivision (a) on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income the rental value of the space so occupied. Such rental value shall be not less than a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and all other expenses) at the rate of 4 per centum per annum of the book value at the end of the taxable year of the real estate so owned or occupied."

tion of the terms, "income," "gross income" and "net income," are of fundamental importance.

■ It might be said, with a fair show of reason, that benefit in the form of actual rental value accruing to one who occupies his own building is in the nature of income from rents. But we may not adopt such conception here. We are required to follow the standard definition of income found in the Sixteenth Amendment and the interpretation thereof by the Supreme Court. The well-established meaning of income in this connection is found in Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 193. 64 L. Ed. 521, 9 A. L. R. 1570—"'Derived—from—capital'; 'the gain—derived—from—capital,' etc. Here we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'—that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal—that is income derived from property. Nothing else answers the description."

In Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 174, 46 S. Ct. 449, 451, 70 L. Ed. 886, the court said: "After full consideration, this court declared that income may be defined as gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital. Stratton's Independence v. Howbert, 231 U. S. 399, 415, 34 S. Ct. 136, 58 L. Ed. 285; Doyle v. Mitchell Brothers Co., 247 U. S. 179, 185, 38 S. Ct. 467, 62 L. Ed. 1054; Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. And that definition has been adhered to and applied repeatedly. See, e. g., Merchants L. & T. Co. v. Smietanka, supra [255 U. S.] 518 (41 S. Ct. 386 [65 L. Ed. 751, 15 A. L. R. 1305]); Goodrich v. Edwards, 255 U. S. 527, 535, 41 S. Ct. 390, 65 L. Ed. 758; United States v. Phellis, 257 U. S. 156, 169, 42 S. Ct. 63, 66 L. Ed. 180; Miles v. Safe Deposit Co., 259 U. S. 247, 252, 253, 42 S. Ct. 483, 66 L. Ed. 923; United States v. Supplee-Biddle Co., 265 U. S. 189, 194, 44 S. Ct. 546, 68 L. Ed. 970; Irwin v. Gavit, 268 U. S. 161, 167, 45 S. Ct. 475, 69 L. Ed. 897; Edwards v. Cuba Railroad, 268 U. S. 628, 633, 45 S. Ct. 614, 69 L. Ed. 1124. In determining what constitutes income substance rather than form is to be given controlling

weight. Eisner v. Macomber, supra [252 U. S.] 206 (40 S. Ct. 189 [64 L. Ed. 521, 9 A. L. R. 1570])."

■ Whatever might be said as to the power of Congress to require life insurance companies to include in their gross income the actual or fair rental value of space occupied by them in their own buildings (a question not necessary here to determine) it is manifest to us that the amount required to be added to gross income under section 245 (b), before deductions may be taken, is not income when measured by the rule in Eisner v. Macomber, supra, and Bowers v. Kerbaugh-Empire Co., supra. It does not represent actual gain. It is neither of exchangeable value nor is it severed from capital. It is not something received or drawn by the taxpayer for his separate use and disposal. It is simply an arbitrary figure, determined by a mathematical formula, to which must be added rents received from other tenants and from which must be deducted taxes, depreciation, and all other expenses to reach a net income of 4 per cent. per annum of the book value (not actual value) of the building at the end of any given taxable year. It does not even purport to approximate the true rental value of the space occupied. It must be increased or diminished inversely, each year, to the increase or decrease of rents received. In Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 114, 46 S. Ct. 48, 49, 70 L. Ed. 183, the court said: "It is true that Congress cannot make a thing income which is not so in fact." See, also, Flint v. Stone Tracy Co., 220 U. S. 108, 145, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

It is here urged, as was urged in National Life Insurance Co. v. United States, supra, that the present tax is a special excise tax laid upon life insurance companies and measured by the aggregate of certain receipts by such companies; that in levying such an excise tax Congress was not acting under the Sixteenth Amendment, and hence the proper definition of income, as used in that Amendment, is wholly immaterial; and, since the respondent has continued to do business in corporate form, it is estopped to deny the validity of the conditions upon which Congress has said this could be done. To so hold would be to deny the obvious fact. In form and substance the Internal Revenue Acts under consideration levy income taxes and not excise taxes. Respondent has accepted no benefits under section 245 (b) of either act. None are in effect granted therein. It has chosen, as it had a right to do, to claim de-

ductions allowed by section 245 (a) (6) and (7) of each act and to resist deficiency assessments founded upon the compulsory inclusion in gross income of that which cannot in any sense be regarded as income. The record fails to disclose that respondent has acquiesced in the provisions of these sections or recognized them as valid. See Frost v. Corporation Commission, 278 U. S. 515, 528, 49 S. Ct. 235, 73 L. Ed. 483. We therefore conclude that the inclusion of the indicated items in respondent's gross income for 1923 and 1924, respectively, as the rental value of the space occupied by it in its building, was in effect the taxation of something nontaxable (Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519; Miles v. Graham, 268 U. S. 501, 45 S. Ct. 601, 69 L. Ed. 1067) and was invalid.

█ It is said that the purpose of section 245 of each act was, not to include in gross income that which was not income, but to limit the deductions of taxes and other expenses paid with respect to real estate owned by life insurance companies, and of the allowance for exhaustion and obsolescence granted in section 245 (a) (6) and (7) of each act. It is urged that this may be done because deductions are statutory, and, although income is controlled by the Constitution, Congress may grant deductions or withhold them entirely or limit the amounts thereof.

The same argument was advanced in National Life Insurance Co. v. United States, supra, but the court there said (277 U. S. page 520, 48 S. Ct. 591, 593, 72 L. Ed. 968): "The suggestion that, as Congress may or may not grant deductions from gross income at pleasure, it can deny to one and give to another, is specious, but unsound."

Congress may, of course, allow to all life insurance companies the deductions granted in section 245 (a) (6) and (7), but having done so it cannot then say that it will deny these same deductions to those life insurance companies which own and occupy in whole or in part their own real estate unless they submit to taxation upon income which is nonexistent.

No claim is made that section 245 (a) (6) and (7) of the acts under consideration, by virtue of which respondent took deductions, are unconstitutional. Both the acts, 1921 and 1924, contain the usual section to the effect that if any of their provisions are held invalid, the remainder shall not be affected thereby.

The order of the Board of Tax Appeals is affirmed.

TUTTLE, District Judge (dissenting).

I cannot agree with the conclusion reached by a majority of the court nor with the views resulting in such conclusion, as expressed in the majority opinion. It seems to me entirely clear that the statutory provisions here involved are subject to none of the constitutional objections urged by the taxpayer and upheld by the court. There are no constitutional prohibitions which prevented Congress from enacting a statute, in proper form, which would impose either an excise tax or an income tax, or both, upon life insurance companies. There is no property or income from property involved in this case which is exempted by the Constitution from taxation as was the fact in National Life Insurance Co. v. United States, 277 U. S. 508, 48 S. Ct. 591, 72 L. Ed. 968. That case, therefore, is, in my opinion, not applicable here. Congress, pursuant to the power conferred upon it by the Sixteenth Amendment, has seen fit by this act to impose an income tax upon certain income of life insurance companies. No effort has been made in the act to impose an excise tax. Congress, having decided, as it had the power to do, to exempt life insurance companies from an excise tax, and from any tax on income from the life insurance business proper, very properly and justly determined and enacted that, in computing the net income to be taxed, the life insurance companies should not be permitted to make deductions from gross income received from property previously accumulated (interest, dividends, and rents) unless such deductions were decreased by "the rental value," as defined in the act, of "any real estate owned and occupied" by the company. This is the real purpose and result of the act, when considered and construed in its entirety. Obviously, Congress recognized that inasmuch as an effort was being made to tax only the income from property already acquired it would not be fair to permit the companies, so exempt from excise taxes and exempt from taxes on income from the life insurance business proper, to use this real estate without taking such use into account in making deductions from the gross income which were subjected to the provisions of this act. It cannot, of course, be doubted that in framing a statute to impose an income tax, Congress could impose such tax upon gross income without allowing any deductions or could allow such reasonable deductions as it deemed proper in determining the net income to be taxed.

The purpose and results of the act in question seem plain. It imposes a tax upon ac-

tual income from certain property, namely, interest, dividends, and rents, without including as income any rental value of the real estate occupied by the taxpayer company, and permits a deduction, from such gross income, which deduction takes into account the use of real estate owned and occupied by such company. This was a constitutional method of accomplishing the desired results. Section 245 (b) denies deductions from gross income unless "the rental value," as defined in such section, of the aforementioned real estate is taken into account in computing the amount of such deductions. This is no more objectionable, from a constitutional standpoint, because it is couched in this permissive language than it would have been if the language providing for such conditional deduction had been imperative. The majority opinion holds section 245 (b) unconstitutional on the ground that it provides for including "the rental value," as there defined, of the space occupied by the company, in the return of gross income. I do not dissent on the ground that such "rental value," however defined or computed, is taxable as income, or constitutes income, but on the ground that it is not in reality included in gross income, nor taxed, by this act. Construing, as we must, sections 245 (a) and 245 (b) together and as a whole, and considering them from the standpoint of the results sought and obtained, they do not impose any tax upon "the rental value," or upon any part of the value, of the space occupied by the taxpayer, but in mathematical language provide, in substance, that if the gross deduction permitted by the act is claimed then that gross deduction must be reduced by the amount of such "rental value," as therein defined. I construe the language of section 245 (b), which directs that if the allowed deduction is claimed the so-called "rental value" shall be included "in the return of gross income," as a mere direction as to manner of computation rather than a matter of substance. For the purpose of reducing to an algebraic formula one of the mathematical methods by which Congress might have proceeded to accomplish the object intended, let us assume that A represents the gross income, which the act defines as the "gross amount of income received from interest, dividends and rents." Let B represent "the rental value" of the "real estate owned and occupied" by the company. Let C represent the gross conditional deduction permitted by the act for taxes, expenses and depreciation. It seems plain that there is nothing in the Constitution which would have prevented Congress from enacting a tax law

which provided that the net amount of income to be taxed was to be determined by taking A, the gross income, and deducting therefrom a sum to be determined by subtracting B, the rental value of the property used by the company, from C, the gross deduction conditionally permitted. The algebraic formula for this method would have been A — (C — B). If we reduce this formula to its most simple algebraic form, it becomes A +. B — C, which is the identical formula provided by the statute under consideration. Instead of providing a formula which would require a determination of the permitted deduction by subtracting B, the rental value of the property used by the company, from C, the gross deduction conditionally permitted, Congress provided the more simple formula which takes A, the gross income, and, if deduction is claimed, adds thereto B, the rental value, and then deducts C, the gross conditional deduction. This gives us the same formula, A + B — C. The two formulae are identical, in theory of taxation and in results. Congress had the power to impose a tax upon A, the gross income, and to provide for C, the gross deduction permitted by the act, and to reduce that gross deduction by subtracting therefrom B, the rental value of the property used. The resulting remainder to be taxed is the same whether we add B, the rental value, to the subtrahend A or subtract it from the minuend C. Neither imposes a tax upon the use or value of real estate. Both take the "rental value" of such use, as measured by the act, into account in determining the deduction permitted. The only difference is in the manner of doing the same arithmetical problem. The act provides for adding A and B and then subtracting C, which, it seems to me, as it evidently did to Congress, is more simple than subtracting B from C and then subtracting the remainder so obtained from A.

The power of Congress and the constitutionality of its enactments should be determined not upon any narrow considerations but in the light of the substance of the statute, having in mind the object intended and the practical results accomplished. The meaning and purpose of this act in its entirety, including section 245 (b), seem to me plain and fully within the powers of Congress. In the final analysis, by sections 245 (a) and 245 (b) of the statute Congress permitted, without requiring, the deduction, from certain gross income of life insurance companies, of certain items of expense as reduced by a certain figure. That figure was

referred to, in section 245 (b), as the "rental value" of the real estate owned and occupied by the taxpayer but its maximum was determined by a certain formula of computation prescribed by the statute. As, however, the last-mentioned figure does not, and is not intended to, represent income, but is used merely as a means of measurement of the amount of the deduction permitted, it is wholly immaterial whether it accurately represents rental value or is merely an arbitrary figure having no relation to the real rental value. Of course, even if it did actually represent rental value that would not meet the constitutional objection urged against its inclusion in, and as, income taxable under the Sixteenth Amendment, for the obvious reason that rental value does not constitute income. Used, however, merely for the purpose of measuring the amount of the permissible deduction in question, it does not, in my opinion, appear to be unreasonable or unfair, and I know of no reason why Congress could not, in its discretion and judgment, adopt it as part of the basis for computation of such deduction. It is, of course, obvious that these sections of the statute do not require, even indirectly, the taxpayer to pay more than the prescribed income tax upon any property except income, inasmuch as the net conditional deduction here allowed need not be claimed by the taxpayer, but may be entirely waived, in which event the latter will pay such income tax upon gross income without any deduction to which payment he can have no constitutional objection.

For the reasons stated, I reach the conclusion that the order of the Board of Tax Appeals should be set aside and the cause remanded for further proceedings not inconsistent with this opinion.