RAMAPO, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60517. Promulgated April 30, 1935.

*D. A. Embury, Esq.,* for the petitioner.
*F. R. Shearer, Esq.,* for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income tax for 1929 in the amount of $10,789.73. By an amended answer the respondent claims an increased deficiency.

The principal question in issue is the basis for computing gains and losses from sales of rights and shares of stock acquired through the exercise of rights issued by the American Superpower Corporation, of which the petitioner was a stockholder, for the purchase of shares of stock of the United Corporation and of the Commonwealth & Southern Corporation owned by the American Superpower Corporation. The petitioner exercised some of the rights and sold some. Upon its books of account the petitioner accounted for the value of the purchase certificates at the dates they were received, namely,

February 1, May 13, and June 24, 1929, as dividends received by it from the American Superpower Corporation. In the determination of the deficiency the respondent has likewise treated the value of the purchase certificates as dividends received from the American Superpower Corporation, but as of the dates fixed by corporate resolutions for identifying the stockholders entitled to receive them, namely, January 23, May 1, and June 5, 1929. By an amended answer the respondent has moved to increase the deficiencv determined by him if as a result of any errors which he may have made in the determination of the deficiency the amount thereof should be increased.

The material facts have all been stipulated and, together with the exhibits referred to in the stipulation and filed at the hearing, are adopted as our findings by reference.

The petitioner is a Delaware corporation and keeps its books and makes its Federal income tax returns on a cash receipts and disbursements basis.

At the beginning of 1929 it was the owner of 8,659 shares of class A and 21,000 shares of class B, or an aggregate of 29,659 shares of the common stock of the American Superpower Corporation (hereinafter sometimes called Superpower). In 1929 Superpower issued to each of its stockholders certain " Purchase Certificates " entitling each stockholder to purchase from it certain shares of stock which it held of the United Corporation and of the Commonwealth & Southern Corporation.

In 1928 a group of persons and corporations who were the owners of shares of stock in three utility companies (Mohawk Hudson Power Corporation, Public Service Corporation of New Jersey, and United Gas Improvement Co.) entered into agreements which led to the organization of the United Corporation (hereinafter sometimes referred to as United), which was incorporated on January 7, 1929, at the instance of J. P. Morgan & Co., Drexel & Co., and Bonbright & Co. Other parties to the agreements above referred to were the Koppers Co., Day & Zimmerman, S. T. Bodine, and S. Z. Mitchell. They agreed to organize United as a holding company and to contribute to it certain specified shares in the three utility companies mentioned in payment or exchange for a certain number of the $3 preference stock, common stock, and option warrants (for the purchase of common stock) of United. Also J. P. Morgan & Co. and the Bonbright Electric Corporation (nominee of Bonbright & Co.) each agreed to buy from United 400,000 shares of its common stock at a price of $22.50 per share and option warrants covering the right to purchase 1,000,000 shares of common stock at $1 per warrant.

It was agreed that the contribution of 800,000 shares of the Public Service Corporation of New Jersey and 53,000 shares of United

Gas Improvement Co. owned by Superpower should be made by the Public Electric Holding Corporation, its subsidiary. These agreements were not reduced to writing prior to January 2, 1929, but were carried out thereafter in the manner specified in the stipulation of facts filed in this proceeding.

As a result of these transactions Superpower received the following stock and option warrants of United: 344,187 shares of $3 cumulative preference stock; 2,210;853 shares of common stock; and option warrants entitling holder to purchase 1,000,000 shares of common stock at $27 per share.

Superpower is a Delaware corporation engaged primarily in acquiring, holding, and selling stocks of public utility corporations and holding companies thereof. At the time of the organization of United, or shortly thereafter, the officers of Superpower contemplated selling shares of stock of United to its own stockholders. The minutes of a meeting of its board of directors held on January 23, 1929, provide in part as follows:

The Chairman presented to the Board, for its consideration, a proposal to offer to Common Stockholders of this Corporation the privilege of purchasing Common Stock of The United Corporation owned by this Corporation—thus securing a wide distribution of the Common Stock of The United Corporation and, at the same time, materially improving the cash position of The American Superpower Corporation. He suggested that the offering price of the Common Stock of The United Corporation be Twenty-five ($25) Dollars per share, and that the holders of Class A and Class B Common Stock of this Corporation be entitled to purchase one-half (½) a share of the Common Stock of The United Corporation for every share of Class A and Class B Common Stock held in this Corporation. He presented to the meeting forms of a Purchase Certificate and Fractional Purchase Certificate to be sent to Class A and Class B Common Stockholders of this Corporation.

On January 31, 1929, purchase certificates dated February 1, 1929, in the form authorized as aforesaid, were mailed to the holders of class A and class B common stock of Superpower of record as of January 26, 1929, and petitioner received, on February 1, 1929, certificates certifying that it was entitled to acquire, pursuant to the aforesaid resolutions, a total of 14,829½ shares of United common at $25 per share.

Subsequent to the receipt on February 1, 1929, of the certificates above referred to petitioner purchased at a cost of $14 a further right to acquire a one-half share of said stock. On February 15, it surrendered its certificates, paid the sum of $370,750 in cash, and received 14,830 shares of United common.

On May 1, 1929, directors of Superpower adopted further resolutions offering to the holders of its class A and class B common stock at the close of business May 8, 1929, the privilege of purchasing additional shares of common stock of United owned by Superpower

at $30 per share and at the rate of one share of United for each four shares of class A and class B Superpower common owned by each stockholder.

On May 12, 1929, purchase certificates dated May 8, 1929, in the form authorized at the directors' meeting, were mailed to the Superpower stockholders and on May 13, 1929, petitioner received a communication from Superpower together with certificates certifying that it was entitled to acquire, pursuant to the aforesaid resolutions and on or before May 24, 1929, a total of 7,414¾ shares of United common at $30 per share. On May 24, 1929, the petitioner sold the 29,659 rights entitling it to purchase 7,414¾ shares of United common at $30 per share for $227,407.28 and claimed a loss of $69,713.62 in connection with such sale, which loss the Commissioner in his notice of deficiency reduced to $28,401.59.

On June 5, 1929, the directors of Superpower adopted resolutions offering the holders of its common stock at the close of business June 18, 1929, the privilege of purchasing on or before July 2, 1929, common stock of the Commonwealth & Southern Corporation (hereinafter sometimes referred to as Commonwealth) at $15 per share and at the rate of one share of Commonwealth for each 10 shares of the new Superpower common (which prior to this date had been split five for one), subject to the acquisition by Superpower of such Commonwealth stock under a certain agreement then pending. Commonwealth was a Delaware corporation organized May 23, 1929. It was organized as a holding company to hold shares of stock in other public utility companies.

On June 22, 1929, purchase certificates dated June 22, 1929, were mailed to the Superpower stockholders and on June 24, 1929, the petitioner received a communication from Superpower together with certificates certifying that it was entitled to acquire, pursuant to the aforesaid resolutions, a total of 14,829½ shares of Commonwealth common. Subsequent to that date the petitioner purchased five additional rights at a total cost of $5.94. It then was possessed of rights to purchase 14,830 shares of Commonwealth common at $15 per share, which rights it exercised on July 2, 1929, and acquired that number of shares of Commonwealth common at a cost of $222,450.

All of the purchase certificates issued by Superpower pursuant to the resolutions of January 23, 1929, were utilized by its stockholders or assignees in the purchase of 821,472 shares of United common from the petitioner. Substantially all of the purchase certificates issued to stockholders as of May 8, 1929, and as of June 18, 1929, were likewise utilized. On the purchase certificates issued by Superpower to stockholders of record as of May 8, 1929, Superpower sold

410,504 shares of United common, and on the purchase certificates issued to stockholders as of June 18, 1929, Superpower sold approximately 823,748 shares of Commonwealth common to its stockholders at $15 per share, which amount was only a fractional part of its total holdings in that company.

There was an active market for United common stock from the time that it was admitted to trading on January 29, 30, and 31, 1929. Superpower sold 9,279 shares out of its total holdings of 2,210,853 shares of common stock of United at prices ranging from $56.96 to $63.46. There was likewise an active market for the sale of the rights issued by Superpower in the form of "Purchase Certificates." The first series of rights was admitted to dealings on the New York Curb Exchange on a "when, as, and if issued" basis on January 25, 1929. These rights sold from the date admitted to trading until they expired by limitation from a low of 11⅝ to a high of 21.

The second lot of rights was admitted to trading on the New York Curb Exchange on a "when, as, and if issued" basis. On May 2, 1929, these rights sold for prices ranging from 6⅛ to 11⅜.

The third lot of rights relating to the purchase of the Commonwealth common stock sold at prices ranging from ¾ to 1‑5/16.

Upon receipt of the respective purchase certificates issued by Superpower the petitioner, pursuant to the several sets of resolutions, entered on its books as dividends amounts representing the weighted average thereof on the basis of sales effected on the New York Curb Exchange on the respective dates of such receipt, namely, February 1, May 13, and June 24, and reported them on its income tax return as dividends from Superpower. The respondent in the notice of deficiency treated the rights so received as dividends, but valued them on the basis of the mean between high and low prices on the respective record dates as of which stockholders entitled to receive such rights were determined, namely, January 26, May 8, and June 18, 1929.

The respective values so claimed by the petitioner and determined by the respondent are as follows:

| Date of pertinent resolutions | Value per right | | Total dividend received | |
|---|---|---|---|---|
| | Per petitioner | Per Commissioner | Per petitioner | Per Commissioner |
| Jan. 23 | $17. 21 | $12. 50 | $510, 431. 39 | $370, 737. 50 |
| May 1 | 10. 0179 | 8. 625 | 297, 120. 90 | 255, 808. 67 |
| June 5 | .81995 | .78125 | 121, 594. 49 | 115, 855. 47 |

On or about July 10, 1929, United issued to its stockholders, including petitioner, rights to subscribe to its own stock. The petitioner received 16,830 such rights, which it sold for a total considera-

tion of $68,859.81. In connection with this sale petitioner deducted on its income tax return a loss of $3,280.11. The respondent in the notice of deficiency disallowed this loss and included in gross income the sum of $7,171.51 as a profit realized on such sale.

Section 115 of the Revenue Act of 1928 provides in material part as follows:

(a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

For reasons fully set forth in *Bradley W. Palmer*, 32 B. T. A. 550, argued together with this case, the purchase certificates issued by Superpower did not constitute dividends under section 115 of the Revenue Act of 1928.

By section 113 (a) of the Revenue Act of 1928 it is provided that:

* * * The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; * * *

The petitioner argues that since the purchase certificates received by it from Superpower had a market value at the dates received by it, the basis for computing gain or loss upon the sale thereof, and upon the sales of shares of stock acquired through the exercise of the rights represented by the purchase certificates, is the fair market value of such certificates at the date of receipt plus, in the case of sales of stock acquired through the exercise of the certificates, the amount paid for such shares.

We are of opinion that this contention of the petitioner can not be sustained. The purchase certificates issued by Superpower did not represent the distribution to its stockholders of any part of its assets. They represented on the part of Superpower nothing but an offer to sell certain assets pro rata to its stockholders at an attractive price to them, but at a price which would return to Superpower a large profit. If the petitioner had not exercised the rights represented by the purchase certificates or the purchase certificates through decline in the market had become valueless in its hands, it would not have sustained any deductible loss. *St. Louis Union Trust Co. et al., Co-trustees*, 30 B. T. A. 370. The purchase certificates did not represent rights to make an additional investment in the shares of Superpower; hence, the method of computing taxable gains received from the sale of the rights approved by the Supreme Court in *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U. S. 247, is not available to the petitioner.

The rights represented by the purchase certificates cost the petitioner nothing; hence, the entire amount received by the petitioner

from the sale of the rights constituted taxable income. The basis for computing the gain on the sale of shares of stock acquired through the exercise of the rights is the amount paid by the petitioner for such shares.

The respondent's claim for an additional deficiency made in its amended answer is hereby granted. All of the data for the computation of the correct liabilities are contained in the lengthy stipulation of facts filed in this proceeding.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*