## BECKERS v. UNITED STATES.
### No. K–263.

Court of Claims.
June 2, 1930.

This case having been heard on an agreed statement of facts, the court makes the following special findings of fact:

(1) Plaintiff is a citizen of the United States and a resident of the city of New York, state of New York.

(2) In 1915 W. Beckers Aniline and Chemical Works, Inc., was incorporated, and plaintiff acquired a block of its stock at a cost of $325,000. In 1916 plaintiff received a stock dividend of $325,000 on this stock,

and in 1917 he received a further stock dividend in the same amount. Each of the said stock dividends received by the plaintiff was originally included by him as income in his income tax return for the year in which received, but upon a redetermination of plaintiff's liability for the years 1916 and 1917 by the Commissioner of Internal Revenue, the said stock dividends were eliminated from the taxable income of the plaintiff for those years. Each of the said stock dividends received by plaintiff was paid out of the earnings or profits of the company and represented a transfer of $325,000 from surplus to capital account on its books.

(3) In 1917 plaintiff sold all of his stock in the company (both his original stock and that which he had received as stock dividends). He received $891,250 of the purchase price in 1917, and the balance, amounting to $528,333.50, in 1918.

(4) The Commissioner of Internal Revenue in 1922 assessed against plaintiff additional income taxes of $159,517.57 for 1917 and $429,856.78 for 1918. In determining these additional taxes the Commissioner used $325,000, the cost of the original stock in 1915, as the basis for computing the taxable gain on the sale of all the stock as described above, and thus determined a gain or profit of $566,250 in 1917, and of $528,333.50 in 1918.

(5) The additional assessment of $159,-517.57 made against the plaintiff for the taxable year 1917 was paid in part by crediting overassessments of $10,500 and $62,400, found to be due the plaintiff for the years 1915 and 1916, respectively, to the said assessment of $159,517.57. The said overassessments were allowed by the Commissioner of Internal Revenue on a schedule signed by him on June 1, 1922. On June 30, 1922, the collector of internal revenue returned a schedule to the Commissioner of Internal Revenue showing that the said overassessments had been credited to the said additional assessment for 1917. The said schedule returned by the collector was signed by the said Commissioner on July 11, 1922. The balance of the additional assessment, $86,617.57, was paid by the plaintiff to the collector of internal revenue on July 19, 1922, under protest.

(6) The additional assessment of $429,-856.78, made against the plaintiff for the taxable year 1918, was paid to the collector of internal revenue on July 19, 1922, under protest.

(7) On July 17, 1926, plaintiff duly filed claim for refund of the additional taxes for

1917 and 1918, upon the grounds referred to in a letter dated June 8, 1927, from the office of the Commissioner of Internal Revenue, in which plaintiff was advised that his claims would be rejected. The letter read in part as follows:

"The claims are based on the statement that the profit as determined by this office and previously included as income from the liquidation of the W. Beckers Aniline and Chemical Works should be decreased due to the increasing your investment by $650,000, representing stock dividends received by you in the years 1916 and 1917.

"You are advised that stock received as a stock dividend does not constitute taxable income but any profit derived from the sale of such stock is taxable income. For the purpose of ascertaining the gain or loss derived from the sale of the stock with respect to which it is issued, the cost of each share (or when acquired prior to March 1, 1913, the fair market value as of such date) will be the quotient of the cost (or such fair market value) of the old shares of stock, divided by the total number of the old and new shares.

"Information on file in this office discloses that the cost to you of the stock of the W. Beckers Aniline and Chemical Works from which you received stock dividends amounting to $650,000 and from which you received liquidating dividends in the years 1917 and 1918, was $325,000. Therefore, in determining the profit from liquidation the cost price of the stock purchased represents the entire cost to be divided by the total number of the old and new shares of stock.

"Since the cost of the stock of $325,000 was used to reduce the amounts received in liquidation, your taxable income was properly determined.

"Your claims will, therefore, be rejected."

(8) Both of the aforesaid claims for refund were officially rejected on July 20, 1927, and no part of the said additional taxes for 1917 and 1918 has ever been refunded to plaintiff.

(9) If it is held that the basis for computing the taxable gain on the sale of the stock should be increased by $650,000 and that the amount of the gain should be correspondingly decreased, then judgment should be for the plaintiff in the amount of $86,-617.57 for the year 1917, and $63,650 for the year 1918, with interest on both amounts at the rate of 6 per cent. per annum from July 19, 1922, to the date of the judgment.

(10) If it is held that the cost of the stock to the plaintiff of $325,000 is the proper basis for computing the taxable gain on the sale of the stock, then judgment should be for the defendant.

James Craig Peacock, of Washington, D. C. (C. E. Koss, of New York City, on the brief), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Ottamar Hamele, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges.

BOOTH, Chief Justice.

The plaintiff purchased in 1915 stock of the W. Beckers Aniline and Chemical Works of the value of $325,000. In 1916 the plaintiff received from the corporation a stock dividend of the value of $325,000, and in 1917 another stock dividend of the value of $325,000 was declared by the corporation. In 1917 the plaintiff sold his entire holdings in the corporation for $1,419,583.50, receiving a cash payment in 1917 of $891,250, and $528,-333.50 in 1918. In 1922 the Commissioner of Internal Revenue assessed against the plaintiff additional taxes amounting to $159,-517.57 for 1917, and $429,856.78 for 1918. In computing gain and profit realized from the above transaction the Commissioner followed article 1547, regulations 45 (1920 edition), as follows:

"Art. 1547. *Sale of Stock Received as Dividend.*—Stock in a corporation received as a dividend does not constitute taxable income to a stockholder in such corporation, but any profit derived by the stockholder from the sale of such stock is taxable income to him. For the purpose of ascertaining the gain or loss derived from the sale of such stock, or from the sale of the stock with respect to which it is issued the cost (used to include also, where required, the fair market value as of March 1, 1913), of both the old and new shares is to be determined in accordance with the following rules:

"(1) Where the stock issued as a dividend is all of substantially the same character or preference as the stock upon which the stock dividend is paid, the cost of each share of both the old and new stock will be the quotient of the cost, or fair market value as of March 1, 1913, if acquired prior to that date, of the old shares of stock divided by the total number of the old and new shares.

"(2) Where the stock issued as a dividend is in whole or in part of a character or preference materially different from the stock upon which the stock dividend is paid, the cost, or fair market value as of March 1, 1913, if acquired prior to that date, of the old shares of stock shall be divided between such old stock and the new stock, or classes of new stock, in proportion, as nearly as may be, to the respective values of each class of stock, old and new, at the time the new shares of stock are issued, and the cost of each share of stock will be the quotient of the cost of the class to which such share belongs divided by the number of shares in that class.

"(3) Where the stock with respect to which a stock dividend is issued was purchased at different times and at different prices, and the identity of the lots can not be determined, any sale of the original stock will be charged to the earliest purchases of such stock (see article 39), and any sale of dividend stock issued with respect to such stock will be presumed to have been made from the stock issued with respect to the earliest purchased stock, to the amount of the dividend chargeable to such stock."

The additional assessment of $159,517.57 for the taxable year 1917 was paid in part by crediting overassessments of $10,500 and $62,400 found to be due the plaintiff for 1915 and 1916. The balance of the additional assessment, to wit, $86,617.57, was paid in cash and under protest. The additional assessment of $429,856.78 for 1918 was paid under protest to the collector July 19, 1922.

If the plaintiff is entitled to recover, the amount of the judgment should be $150,267.57, with interest; i. e., overpayments for 1917 of $86,617.57, and for 1918, $63,650. The plaintiff insists that he is entitled to recover the above sums under the provisions of the revenue acts of 1917 and 1918 and the established regulations of the Commissioner then applicable to computing gain and profit realized from the sale of stock as this stock was acquired and sold. In the brief of plaintiff the contention is stated as follows:

"Under the *statutory provisions applicable to the taxation of such a profit*, as originally and correctly interpreted by the regulations of the Treasury Department, the basis of the computation of the profit was $975,000 (i. e., the aggregate of the original cost plus the amounts at which the stock dividends were returnable as income under the *separate and distinct provisions in those same acts with respect to the taxation of stock dividends*). The profit was the difference between that amount and the total selling price of $1,419,583.50, or, $444,583.50."

Except for the decision of the Supreme Court in the case of Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, wherein it was held that stock dividends could not under the Constitution be taxed as income for the year in which received, the plaintiff's argument would be sustainable. The revenue acts of 1916 and 1918 taxed stock dividends as income of the taxable year in which received. The Commissioner in formulating regulations to carry the acts into effect, prior to the decision in Eisner v. Macomber, supra, adopted a basis for computing gain and profit realized from the sale of such stock, predicated upon the difference between the stock's value for income taxation and the purchase price received by the owner for it. The correctness of this regulation is not challenged. Stock taxed on the basis of income value was manifestly to be accorded the value upon which income taxes had been assessed when it became essential to determine gain and profit accruing from the sale of the same stock; otherwise double taxation would follow. The mere statement of this fact demonstrates the soundness of the regulations of 1917 and 1918. In 1920, however, when the Commissioner audited the returns for 1917 and 1918 and made his determination of plaintiff's tax liability, the Supreme Court had held the statute taxing stock dividends to be unconstitutional. Such stock received as a dividend was, therefore, not subject to income taxation at the time distributed, and the Commissioner eliminated from plaintiff's net income for the years 1917 and 1918 the above stock dividends as taxable income for those years, leaving only the ascertainment of the gain and profit realized by the plaintiff from the sale of all the stock herein involved. The regulations of the Commissioner covering a transaction similar to the one in issue, promulgated at a time when stock dividends were taxable as income no longer, in so far as wording was involved, remained precisely applicable, and the Commissioner promulgated the regulations heretofore cited (article 1547, supra) to meet the situation. These regulations, in our opinion, accomplish substantially the precise result obtained by the application of the regulations of 1917 and 1918, set out as an appendix to this opinion. In determining the additional tax which the plaintiff seeks to recover, the Commissioner followed the regulations promulgated after the decision in Eisner v. Macomber, supra, which regulation was, in our opinion, a prop-

er interpretation of the Revenue Acts of 1916 (39 Stat. 756) and 1918 (40 Stat. 1057) the plaintiff's original stock was acquired for a cash outlay of $325,000. This was the cost to him of his entire holdings, and from the selling price received this sum was deducted. Section 2(a) of the Revenue Act of 1916 (39 Stat. 757) provided: " * * * the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities; or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever: Provided, That the term 'dividends' as used in this title shall be held to mean any distribution * * * by a corporation, * * * out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders, whether in cash or in stock of the corporation * * * which stock dividend shall be considered income, to the amount of its cash value."

The revenue act of 1918 similarly defined taxable income, and also provided that the term "dividends" should include stock dividends. The Supreme Court in Eisner v. Macomber, supra, held the statute unconstitutional in so far as it required the inclusion in taxable income of the stock dividend, and, on page 212 of 252 U. S., 40 S. Ct. 189, 195, said: "It is said that a stockholder may sell the new shares acquired in the stock dividend; and so he may, if he can find a buyer. It is equally true that if he does sell, and in doing so realizes a profit, such profit, like any other, is income, and so far as it may have arisen since the Sixteenth Amendment is taxable by Congress without apportionment."

Profit realized from the sale of stock is concededly taxable, and it is difficult to perceive wherein the computation of the Commissioner in ascertaining the taxable profit in this case is in anywise erroneous or illegal. The revenue acts of 1916 and 1918 impose a tax upon gains and profits arising from sales or dealings in property, real or personal, or gains or profits and income derived from any source whatever. This provision of the statute was not affected by the decision of the court in Eisner v. Macomber, and the language clearly authorized the collection of the tax here in question upon the sale by the plaintiff of his stock. It is true that section 31(a) of the Revenue Act of 1916 (as added by Revenue Act 1917, 40 Stat. 337), defined the term "dividends" as including stock dividends and set up a rule for the measurement of the value of stock dividends as income, and the regulations of the Commissioner responded to the legislation. The Eisner v. Macomber Case rendered the whole proceedings as to the inclusion in income of the cash value of stock dividends invalid, but in so doing it may not be said that Congress released from taxation gains or profits derived from sales or dealings in property and from any source whatever, or that the Commissioner was forestalled under the revenue acts later in force from promulgating regulations consistent with law, forming a correct basis for the ascertainment of gains and profits derived from sales of stock, dividends, or otherwise. The statutes relied upon by the plaintiff gave legislative value to stock received as a dividend for income taxation. The question of gain and profit from the sale of stock remained undisturbed, and while in this particular instance the effect of the Commissioner's regulations may result eventually in the payment of substantially the same amount of tax as Congress did impose under the revenue acts of 1916 and 1918 upon stock dividends, because the plaintiff's stock dividends were free distributions, nevertheless it is not to be asserted that in all instances a similar situation would prevail. Beyond doubt plaintiff's investment is represented by the single cash expenditure of $325,000, and, following the sale of all his stock, he had accumulated in cash the difference between his cash investment and what he received when the stock was sold. The profit measured by the difference between the cost of the original stock and the sales price of that stock and the shares received as a stock dividend was none the less taxable income because the statutes held invalid attempted to tax the stock dividend at the time it was received. After the decision in the Macomber Case the situation with reference to the taxation of gains and profits was the same as if the statutes had never undertaken to tax a stock dividend. Norton v. Shelby County, 118 U. S. 425, 442, 6 S. Ct. 1121, 30 L. Ed. 178.

In view of this record it is difficult to perceive wherein under the revenue acts plaintiff may claim a deduction from the sales price of a value fixed by the terms of an act which the Supreme Court held to be unconstitutional.

The petition will be dismissed. It is so ordered.

## Appendix

"By sections 2(a) and 31(a) of the income tax act of September 8, 1916, as amended, taxable income includes stock dividends paid by a corporation in 1916 or subsequent years out of its earnings or profits accrued since March 1, 1913, to the amount of the earnings or profits so distributed, * * *

"For the purpose of ascertaining under the income-tax act the gain or loss derived from the sale of stock or other property, its cost, or if acquired before March 1, 1913, its fair market price or value as of March 1, 1913, is evidently the basis to be sought. Such basis once found, the problem is resolved into a matter of subtraction. To avoid unnecessary complication 'cost' is used herein to include also, where required 'fair market price or value as of March 1, 1913.'

"For the purpose, then, of ascertaining the gain or loss derived from the sale of stock of a corporation received as a dividend, or from the sale of the stock in respect of which such dividend was paid, the cost of such stock is to be determined in accordance with the following rules: * * *

"(3) In the case of stock received as a dividend in 1916 or subsequent years out of surplus earnings or profits accrued since March 1, 1913, the cost of each share is the valuation at which it was returnable as income, as shown by the transfer of surplus to capital account on the books of the corporation, usually its par value.

"(4) In the case of the stock in respect of which any stock dividend was paid as described under (3), the cost of each share is its original cost, regardless of any stock dividend."

T. D. 3052 provided:

"The following applications of the decision of the Supreme Court of the United States in the case of Eisner v. Macomber in the determination of the taxability of dividends declared by corporations are published for the information and guidance of internal revenue officers and others concerned: ·· * *.

"6. The profit derived by a stockholder upon the sale of stock received as a dividend is income to the stockholder and taxable as such, even though the stock itself was not income at the time of its receipt by the stockholder. For the purpose of determining the amount of gain or loss derived from the sale of stock received as a dividend or of the stock with respect to which such dividend was paid, the cost of each share of stock (provided both the dividend stock and the stock with respect to which it is issued have the same rights and preferences) is the quotient of the cost of the old stock (or its fair market value as of March 1, 1913, if acquired prior to that date) divided by the total number of shares of the old and new stock."

T. D. 3059 provided:

"In accordance with the recent decision of the Supreme Court of the United States in the case of Eisner v. Macomber (T. D. 3010), holding that a stock dividend is not taxable income to the stockholder, articles 1545, 1546, and 1642 of Regulations No. 45 are hereby revoked, and article 1547 is amended to read as follows:

"'Art. 1547. *Sale of Stock Received as Dividend.*—Stock received as a dividend does not constitute taxable income to the stockholder, but any profit derived by the stockholder from the sale of such stock is taxable income to him. For the purpose of ascertaining the gain or loss derived from the sale of such stock, or from the sale of the stock with respect to which it is issued, the cost (used to include also, where required, the fair market value as of Mar. 1, 1913), of both the old and new shares is to be determined in accordance with the following rules:

"'(1) Where the stock issued as a dividend is all of substantially the same character or preference as the stock upon which the stock dividend is paid, the cost of each share of both the old and new stock will be the quotient of the cost, or fair market value as of March 1, 1913, if acquired prior to that date, of the old shares of stock divided by the total number of the old and new shares.'"