## BIGELOW v. BOWERS.

### No. 165.

Circuit Court of Appeals, Second Circuit.

Feb. 5, 1934.

Bigelow & Beatty, of New York City, for appellant.

Thomas E. Dewey, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

In 1916, the plaintiff owned thirty shares of the capital stock of a New Jersey corporation. He had paid $1,875 for them. While section 2 (a) of the Revenue Act of 1916 (39

Stat. 756, 757) was in effect, the corporation declared a stock dividend of 200 per cent. and transferred in cash to capital account from surplus earned since February 28, 1913, the par value of the dividend shares. The plaintiff received sixty shares as a dividend on his stock. He reported such dividend as taxable income in the amount of $6,000 for that year in accordance with the statute above mentioned and regulations thereunder and paid the tax.

In 1918, the plaintiff sold his ninety shares of stock for $5,625. He reported in his return for that year a loss on the sale computed by adding the original cost of the thirty shares, $1,875, to the par value of the dividend shares, $6,000, and subtracting the sale price, $5,625, from the total. In so doing he complied with sections 201 (a) and (c) of the Revenue Act of 1918 and T. D. 45, Art. 1546.

On March 8, 1920, the decision in the case of Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, was handed down. It was then known that stock dividends were not taxable income, but it was not until the passage of the Revenue Act of 1921 (42 Stat. 227), that the provisions of the 1918 act taxing them as such were repealed. In the meantime, after the decision in Eisner v. Macomber, supra, the regulations of the Treasury Department relative to the taxation of such dividends as income were revoked, and article 1547 of Reg. 45 was amended to read as follows:

."Art. 1547. *Sale of stock received as dividend.*—Stock received as a dividend does not constitute taxable income to the stockholder, but any profit derived by the stockholder from the sale of such stock is taxable income to him. For the purpose of ascertaining the gain or loss derived from the sale of such stock, or from the sale of the stock with respect to which it is issued, the cost * * * of both the old and new shares is to be determined in accordance with the following rules:

"(1) Where the stock issued as a dividend is all of substantially the same character or preference as the stock upon which the stock dividend is paid, the cost of each share of both the old and new stock will be the quotient of the cost, * * * of the old shares of stock divided by the total number of the old and new shares."

The appellant never filed any claim for refund of the tax paid by him on the dividend shares he received in 1916. In 1923, however, the tax due on his return for 1918 was redetermined in accordance with the regulations above quoted; the loss on the sale of the stock shown by the appellant in his return was disallowed and a deficiency assessed on the basis of a profit of $3,750, which increased the appellant's taxable income by that amount. The appellant, after unsuccessful attempts to have the deficiency redetermined in his favor, paid the additional tax of $2,151.17 under protest and brought this suit to recover it.

The basis of his claim is that, since Congress intended to tax stock dividends as income when the Revenue Act of 1918 was passed and should not be presumed, in the absence of a clear expression to that effect, to have intended double taxation, United States v. Supplee-Biddle Hardware Co., 265 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970, it did not intend to tax the entire sale price of dividend stock when sold as a gain derived from the sale; and, further that the intent of Congress must be determined in the light of existing conditions when the statute was passed and before the decision in Eisner v. Macomber, supra.

The pertinent portions of the Revenue Act of 1918 are (Revenue Act of 1918 [40 Stat. 1057, 1059, 1060, 1065]):

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"Sec. 201. (a) That the term 'dividend' when used in this title (except in paragraph [10] of subdivision [a] of section 234) means (1) any distribution made by a corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913. * * *

"(c) A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed. Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits. * * *

"Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913; * *· *

"(2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203."

That the appellant is right in saying that Congress intended to tax stock dividends as income when the above statute was passed is obvious. We agree with him also that what Congress intended to tax when the 1918 act was passed was not changed by the subsequent decision of the Supreme Court. That decision merely went to the power of Congress to tax stock dividends as income. In carrying out its general purpose to include all income in gross income for the purpose of determining taxable income, Heiner v. Colonial Trust Co., 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed. 256, it enacted section 201 (a), (c) of the 1918 act. It exceeded its power, not in taxing income, but in including, as a part of the basis for the computation of the income tax, stock dividends which the Supreme Court later held were not income and so not taxable as such. However, the fact that Congress plainly intended to include all income in the base and to put stock dividends into it as income must be considered in connection with the intent of Congress, expressed with equal clarity, to include in the same base " * * * gains, profits * * * from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * * or gains or profits and income derived from any source whatever. * * *" Section 213 (a).

It does not necessarily follow that, in giving effect to the intent of Congress to tax dividend stock as income and to tax gains and profits derived from the sale of all property which, of course, included all shares of stock, whether dividend stock or not, there would be any double taxation and so be necessary to impute to Congress any intent to impose double taxation upon any one. These two taxes would not be based even in part upon the same economic change in the taxpayer's situation unless that which was taxed as income was also included in that which was taxed as the gain or profit derived from the sale. Whether or not it was included in the latter depended merely upon what factors were given effect in computing the gain or profit. Without double taxation, there might have been an additional taxable gain derived from the sale of dividend stock, if the sale price was high enough, even when dividend stock was taxed as income and its valuation for that tax deducted as its cost in computing the gain on sale.

So long as stock dividends were considered income, it was reasonable and just to provide, as the Treasury regulations then did, that, when dividend stock was sold the gain or loss on the sale should be determined by taking as its cost "the valuation at which it was returnable as income" for taxation purposes. T. D. 45, art. 1546 (3). This method gave effect to the part of the 1918 act which taxed gains on sales without including in the gain so taxed that part of the value which had been otherwise included in gross income for purposes of taxation. The tax on gains from sales was unaffected as a lawful tax by the decision in Eisner v. Macomber. The 1918 act taxed actual gains from sales from the time it became effective and while it remained in force whether stock dividends were taxable as income or not. The decision as to the latter did no more, so far as any issue here is affected, than to require a change in the concept of cost to the owner in computing the gain or loss on the sale of dividend stock in order to determine whether or not there had been any gain. The statute did not undertake to do that, but imposed the tax upon whatever gain was derived from the sale. Before the decision in Eisner v. Macomber, supra, it was considered that the recipient of dividend stock received income when he got the stock. He realized a profit at that time and paid a tax upon it. While this theory prevailed, it could not be said that when he sold the stock he derived any gain from the sale except when he received something in excess of the income he had already received. He could not make the same profit twice. So, while sale gains were taxed under the statute, only this excess was taxed as a gain under the regulations. But, when it became necessary to take the view that the recipient received no income when he got dividend stock, it became apparent that, if and when he sold that stock, all that he received over and above what the stock had actually cost him was not only his profit, just

as it always had been, but that such profit was derived wholly from the sale and realized only then. Where before it was possible to obtain what was treated as a profit for purposes of taxation both when the dividend stock was received and when it was sold, if the sale price exceeded the valuation at which the stock had been returned for taxation as of the time it was received, after Eisner v. Macomber, supra, there was but one taxable change in the taxpayer's situation as a result of the receipt and sale of dividend stock. Other than to this extent the decision in Eisner v. Macomber, supra, left the tax on gains from the sale of shares of stock untouched. The intent of Congress to tax such gains was clear from the passage of the statute. What are in fact such gains was made clear by what follows from the decision in Eisner v. Macomber, supra.

That the plaintiff has been taxed on a gain derived from the sale of his stock gives him no just cause for complaint if the computation of the gain was correct, and we do not understand that he questions the computation itself. He had ample time to claim a refund after he knew the tax he had paid on his dividend stock was unlawfully collected, and yet did not see fit to do that.

Judgment affirmed.

MANTON, Circuit Judge (dissenting).

In 1914, appellant purchased 30 shares of stock for $1,875 and in 1916 received a stock dividend of 60 shares out of the profits accrued since March 1, 1913. Under the 1916 Revenue Act, § 2 (a), 39 Stat. 756, appellant paid a tax on the 60 shares, valued at $6,000, being the amount transferred from surplus to capital account, when these dividend shares were issued to him. In 1918, the appellant sold the 90 shares for $5,625 and claimed a loss for that year of $2,250, the difference between the sum of the original price of $1,875 plus the stock dividend value of $6,000 and the sale price of $5,625. The tax for 1918 as thus returned was paid in 1919.

The 1916 act imposed a tax on stock dividends "which stock dividend shall be considered income, to the amount of its cash value." The Revenue Act of 1918 applied for the year appellant sold his stock, and section 213 (a) and section 201 (a) (c) thereof carried the same provisions as section 2 (a) of the Revenue Act of 1916, except that stock dividends were required to be considered as income "to the amount of the earnings or profits distributed."

On March 8, 1920, Eisner v. Macomber, 252 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970, decided that an income tax on a stock dividend under the 1916 act was unconstitutional. In the fall of 1920, Treasury Decision 3059 was issued revoking articles 1545, 1546, and 1642 and amending article 1547, Regulations 45, to read that a stock dividend was not taxable, but, on the sale of the stock, the cost basis was to be determined by the apportionment of the cost of the original stock. Article 1546 as originally promulgated provided that, as stock dividends were taxable under the 1916 act, for the purpose of ascertaining the gain or loss derived from the sale of stock of a corporation received as a dividend or for the sale of the stock in respect to which such a dividend was paid, the cost of such stock is to be determined in accordance with the following rule:

"(3) In the case of stock received as a dividend in 1916 or subsequent years out of earnings or profits accumulated since February 28, 1913, the cost of each share is the valuation at which it was returnable as income, as shown by the transfer of surplus to capital account on the books of the corporation, usually its par value."

Thus, before the decision in Eisner v. Macomber, the Regulations construing the acts of 1916 and 1918, levying a tax on stock dividends as income received, the Commissioner found the cost of the stock at the valuation at which it was transferred from surplus to capital on the books of the corporation and taxed the difference between the selling price and this valuation as the profits of the sale and as income. It was the valuation at which the dividend was returned as income.

After the decision of Eisner v. Macomber, the Treasury construed the act of 1918, which was in effect when this taxpayer sold his stock, as not taxing stock dividends, but as taxing the entire proceeds thereof as profits derived from a sale. The Treasury necessarily thus maintained that the act of 1918 had one meaning before the decision of Eisner v. Macomber and a different meaning after that decision. But the act remained unamended until the Revenue Act of November 23, 1921 (42 Stat. 227), wherein Congress for the first time declared stock dividends not taxable.

In 1923 appellant's 1918 tax was re-examined and the taxable income calculated under the amendment of Regulations 45, using the apportionment basis and increasing his taxable income $3,750. Appellant paid the deficiency tax and sues to recover. Appel-

lant's time to file a claim for a refund of the 1916 tax expired in 1922.

If what the appellee has contended for here prevails, it results in the evil of double taxation to the appellant. We can attribute to Congress no such intention unless the statute expressly so provides. By the Regulations of the Treasury a sale of the stock dividend was taxable under the 1916 and 1918 acts only in so far as the proceeds exceeded the valuation at which the stock dividend had been returned as taxable income. Because of the decision in Eisner v. Macomber, it is held below that the entire proceeds of a stock dividend falls into tax under that provision of the statute which levied a tax on profits of sales; that this justifies a reversal of the previous construction of the act.

Eisner v. Macomber stated that section 2 (a) of the 1916 act plainly evinced the purpose to tax stock dividends. Section 2 (a) provided that "stock dividend shall be considered income, to the amount of its cash value." The Revenue Act of 1917, title 12 (40 Stat. 329), amended the act of 1916. Section 1200 amended section 2 (a) by eliminating the proviso, and section 1211 (40 Stat. 337) added a new section to the 1916 act, section 31 (a), providing that stock dividends "shall be considered income, to the amount of the earnings or profits so distributed." Indeed the Revenue Act of 1918 makes more specific provision for taxation of dividends. Section 213 (a) states that gross income includes gains derived from dividends. Section 201 (c) provides that a stock dividend shall be considered income "to the amount of the earnings or profits distributed." Section 202 (a) (2) provides that the cost shall be the basis for determining gain or loss on the sale of property acquired on and after March 1, 1913. The Revenue Act of 1921, § 201 (d), provides that a stock dividend shall not be subject to tax, and section 202 (a) provides that cost shall be the basis for property acquired after February 28, 1913. Thus the plain purpose of the acts of 1916 and 1918 to tax stock dividends, when distributed, is recognized in the practice actually followed under the Treasury Regulations applicable to the acts of 1916 and 1918. Since stock dividends distributed under the 1913 act were not taxable, and those under the acts of 1916 and 1918 were considered taxable, in order to avoid double taxation, Treasury Decision 2734, approved June 7, 1918, provided that, on sale of stock dividends received under the later acts, the "cost of each share is the valuation at which it was returnable as income, as shown by the transfer of surplus to capital account on the books of the corporation, usually its par value."

Appellant contends that section 201 (c) of the 1918 act, although unconstitutional, must be read with section 202 (a) to determine the meaning of the latter. And he argues that since Congress intended to tax stock dividends under section 201, it did not intend to tax the same dividend again under section 202 and that the defeat of the intent of section 201 cannot be the occasion for enlarging the scope of section 202. Appellant claims that section 202 intends to tax on sale only the difference between the sale price and the cost, which is the value at which the stock dividend was returnable for taxation under section 201. The appellee contends that Congress intended to tax all income, and, failing to reach stock dividends under section 201, taxed them on sale under section 202. In making his contention, the appellant does not necessarily contend that a stock dividend has a real cost independent of the old stock, but that section 202 intended to tax only the difference between the sale value and the par value of the stock dividend and that intent and purpose cannot be expanded because section 201 is unconstitutional. The appellee's contention is that, since section 201 is bad, we should consider section 202 alone and the amended regulations apportioning the cost of the old stock to stock dividends. This necessarily denied to stock dividends an independent cost.

It is improper to reject the unconstitutional section 201 as an aid in interpreting section 202. Section 201 should be read together with section 202 to determine the intent and purposes of section 202. Section 202 states that the basis on sale of property should be cost. In view of section 201, and the rule of interpretation against double taxation, section 202 does not tax stock dividends, not only because they have a cost, but also because they are taxable under section 201.

Whether or not the stock dividend shall be given a cost independent of the original stock is a matter of tax administration which, within the statutory limits, is concerned primarily with taxing all income. Where stock dividends were taxed, when distributed under the 1916 and 1918 acts, the regulations properly attributed an independent cost to them for the purpose of taxing a gain on sale of the stock dividends. As stated when Eisner v. Macomber caused a change in the administrative practice, the regulations apportioned

the cost of the original stock to the stock dividend. Why the government did not eliminate this tax when it re-examined the appellant's return and when it taxed the stock dividend on sale, Beckers v. United States (Ct. Cl.) 42 F.(2d) 300, or allow the stock dividend cost equal to the value on which a tax was paid as under the old regulations, is unexplained. It reopened the tax after the time for refund had lapsed, and now urges an interpretation of section 202 which will permit it to tax the stock dividend on sale as if it had not been taxed under the unconstitutional section 201. The result is unfair and very wrong; no interpretation should be adopted which will permit this result unless the statute compels it.

Where a tax has been paid under section 201, the stock dividend obtains a cost for the purposes of tax administration under section 202 to be calculated either as article 1546 originally provided or as it is provided after its first amendment of April 17, 1919. Surely it was not the intention of the 1916 and 1918 acts to tax stock dividends and later to tax the entire proceeds of the sale thereof, resulting in the evil of double taxation. The legislative intent of the Revenue Act of 1918 was to tax dividends as such and not to tax the entire proceeds thereof as gains and profits derived from sales. To permit the latter requires an addition to the language of the statute which Congress alone is qualified to make. The decision in Eisner v. Macomber did not render taxable that which before was not taxable. If it was not the intention of Congress to tax all the proceeds as profits derived from sale, the intent not to tax the proceeds did not become a contrary intent merely because the tax on stock dividends as income was invalidated by the courts. It is the intent of the statute that is controlling, not an intent disclosed by the 1921 act.

When Congress enacted the Revenue Act of 1918, it had before it the act of 1916, which had been construed and applied by the Treasury as not taxing the proceeds of a stock dividend except in the amount by which such proceeds exceeded the valuation at which the dividend had been returned as income. T. D. 2734. If this construction was not in accord with the legislative intent of Congress, it could easily have been rectified by amendment, but, instead of doing so, the act of 1918 re-enacted the act of 1916 in substantially the same language, which we may deem to be an approval and adoption of the construction of the Treasury. Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed.

457; Edwards v. Wabash Ry., 264 F. 610 (C. C. A. 2).

Section 1402 of the Revenue Act of 1918 (40 Stat. 1150) provided that, if any clause or part of the act should be declared invalid by a court of competent jurisdiction, such judgment would not affect or impair or invalidate the remainder of the act, "but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment has been rendered." Thus, if the part of the act which prescribes a tax on dividends is invalid, that declaration of invalidity attaches only to that portion of the act "directly involved in the controversy" in which judgment was rendered in Eisner v. Macomber. Plainly the intention of Congress was to tax stock dividends as such and not impose taxation under another provision of the act on the proceeds of the same stock dividends as profits derived from sales.

When the Treasury imposed this tax on the sale of stock dividends before the 1921 act by promulgating amended Regulations 45, it was not authorized to do so by virtue of section 1309 of the Revenue Act of 1918 (26 USCA § 1245 and note). Merely because the stock tax was ineffectual, it had no right to substitute for the tax a levy on the proceeds of the stock dividend without giving a cost provided for by section 202. Eisner v. Macomber rendered the stock dividend tax incapable of enforcement, but it did not impair the fact that Congress intended to tax the stock dividends. It did not justify a construction that, if invalid, it did intend to tax the same dividends in another way, as profits from sales.

Moreover, economically the stock dividend has a cost independent of the original stock which should be recognized under section 202. The cost of the original stock is the price paid for it, and the cost of an additional issue is the price paid for it. Equally there is a price paid by the stockholder for a stock dividend, and that price should be adopted as the cost of the stock dividend. That price and that cost is the surplus transferred from surplus to capital account when the stock dividend is issued. In point of fact, in the case of a stock dividend, the stockholder permits his corporation to transfer from surplus to capital account the value of the stock dividends issued. Indisputably, if he had received the surplus in a cash dividend and bought additional stock, the cash reinvestment would be the basis of the additional stock. The stock dividend produces the same result by avoiding a sale and purchase of stock. We should

in fairness attribute the same effect to the same result. It is but the Treasury regulations that forbid doing so. The same transfer from surplus to capital account is a reinvestment of capital to the same extent that the cash dividend used to buy stock is a reinvestment of capital and the surplus transferred presumably the par value of the stock dividend is the proper basis of cost of the stock dividend. A refusal to accept this basis and the tax computed on a lower basis would tax the capital investment.

In objection, it may be said that payment of cash dividend is not similar to a transfer of surplus to capital account for an issue of stock dividends because the stockholders' right to a cash dividend received is unlike the stockholders' right to surplus held by the corporation. Admitting that the corporation is the legal owner of the surplus and that the directors have a very wide control over the distribution of surplus in dividends, it may be pointed out that the stockholders control the election of directors, and have some equitable claim to surplus and indirectly control the distribution of surplus. Indeed, in a corporation closely held, the control of distribution of surplus is more than indirect. Nor is it a fatal objection that cash dividends reinvested are unlike stock dividends because in the former the stockholder pays a tax on receipt and for that reason is permitted a basis of the cost of the stock for future sale. As stated above, under the 1916 and 1918 acts, this was not regarded as an objection because the taxpayer under the regulations on sale of a stock dividend was allowed a basis of the cost of the stock dividend, to wit, the amount transferred from surplus to capital. The fact that a stock dividend is exempt from taxation does not make a stock dividend the less a capital asset.

In Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 42 S. Ct. 483, 485, 66 L. Ed. 923, in speaking of stock rights, which are closely analogous to stock dividends, the court said: "To treat the stockholder's right to the new shares as something new and independent of the old, and as if it actually cost nothing, leaving the entire proceeds of sale as gain, would ignore the essence of the matter, and the suggestion cannot be accepted."

Much that is said in Eisner v. Macomber as to nothing having been paid for the stock dividend by the stockholder was used argumentatively to demonstrate that a stock dividend was capital and not income. But where, as here, the appellant has held the dividend stock together with his original stock for years, the dividend stock had a value capable of estimate, and that sum should enter into its cost basis. Congress did not intend to tax the proceeds of the sale as such, but rather the profit after allowing a valuation for the stock dividend.

The judgment should be reversed.