## COMMISSIONER OF INTERNAL REVENUE v. KOSHLAND.*
### No. 7724.

Circuit Court of Appeals, Ninth Circuit.
Jan. 20, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to the Atty. Gen., for petitioner.

John C. Altman and Richard S. Goldman, both of San Francisco, Cal., for respondent.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This is a petition brought by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals holding that respondent's income tax liability for the year 1930 was $330.98 less than the Commissioner had determined it to be. The facts are as follows:

Respondent owned 165 shares of the preferred stock of Columbia Steel Corporation, some of which she purchased in 1924 and some in 1926. The total price paid by respondent for her stock was $14,996.11. The corporation's articles of incorporation provided that holders of its preferred stock should receive annually, as dividends thereon, $7 per share in cash or, at the option of the corporation, one share of its common stock for each share of preferred. The articles further provided that dividends on the preferred stock should be paid in full before any dividends should be paid or payable on the common. All voting rights pertained to the common stock, none to the preferred.

In each of the years 1925, 1926, 1927, and 1928, the corporation had a surplus sufficient to pay the preferred dividends in cash, but elected to pay them, and did pay them, in common stock, as authorized by its articles. Respondent received in those years an aggregate of 524½ shares of common stock as dividends on her preferred stock. In 1930 the corporation redeemed its preferred stock at $105 per share; respondent receiving for her 165 shares $17,325. In computing the profit realized by respondent, the Commissioner adjusted the cost basis of respondent's preferred stock by apportioning the $14,996.11 which she paid therefor between that stock and the common stock received by her as dividends thereon, in proportion to their respective values, thereby reducing the cost basis of respondent's preferred

*Writ of certiorari granted 56 S. Ct. 669, 80 L. Ed. —.

stock to $11,505.80. Thus computed, the profit realized by respondent was $5,819.20.

The Board of Tax Appeals held that the adjustment made by the Commissioner was improper; that the proper cost basis of respondent's preferred stock was the $14,996.11 which she paid therefor, and that, consequently, the profit realized therefrom was only $2,328.89. The effect of this holding is to reduce respondent's tax liability for the year 1930 to an amount $330.98 below that determined by the Commissioner. The Commissioner assigns this holding as error, and contends here, as he did below, that his adjustment of the cost basis of respondent's preferred stock was proper and should be upheld.

The propriety of this adjustment is determined by the character of the dividends paid in common stock of the corporation to holders of its preferred stock. It is conceded that, if these dividends were taxable income, the adjustment was improper, and the Board's decision should be affirmed. It is also conceded, as it must be, that, if these were stock dividends, they were not taxable income. In the Revenue Act of 1924, c. 234, § 201 (f), 43 Stat. 254, 255, in the Revenue Act of 1926, c. 27, § 201 (f), 44 Stat. 10, 11, and in the Revenue Act of 1928, c. 852, § 115 (f), 45 Stat. 822, it was provided that: "A stock dividend shall not be subject to tax." Thus the first question to be decided is whether the common stock received by respondent as dividends on her preferred stock did or did not constitute stock dividends.

Respondent admits that, when she received these dividends, she thought they were stock dividends, treated them as such, never reported them as income and never paid taxes on them, but she now says she was wrong in so thinking and so acting. She now contends that these were not stock dividends, because they were paid in common stock, whereas the stock on which they were paid was preferred stock. Whether this circumstance excludes them from the category of stock dividends is the question now to be considered.

In Thompson on Corporations (3d Ed.) vol. 7, p. 137, § 5263, it is stated that "a stock dividend is what the term itself implies, a distribution of the stock of the corporation among the stockholders as a dividend." Other definitions are:

"A dividend made payable by a corporation in new or unissued shares of its own stock." (14 C.J. 812); "one paid in stock, that is, not in money, but in a proportional number of shares of the capital stock of the company, which is ordinarily increased for this purpose to a corresponding extent" (Black's Law Dictionary [2d Ed.] p. 383). In none of these definitions is there any suggestion that, in order to constitute a stock dividend, the stock distributed and the stock already held must be of the same class.

The term "stock dividend" is not defined in the Revenue Acts, but the Treasury Regulations promulgated thereunder have uniformly treated it as embracing any stock issued by a corporation as a dividend to its stockholders, regardless of whether the stock so issued is or is not of the same class as the stock in respect of which it is issued. Regulations 65 and 69, article 1548; Regulations 74, article 628. This administrative interpretation is clearly correct. Even if doubtful, it should be upheld, unless unreasonable or inconsistent with the acts. Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457; Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297. It is neither unreasonable nor inconsistent, but is, we think, the only reasonable or consistent interpretation which could have been adopted.

The case of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, cited by respondent, does not support her contention. The question in that case was whether a stock dividend paid in common stock of a corporation to holders of its common stock was income, within the meaning of the Sixteenth Amendment. The Supreme Court held that it was not, and that Congress, therefore, had no power to tax it as such. The question here presented is whether dividends paid in common stock of a corporation to a holder of its preferred stock were stock dividends, within the meaning of the Revenue Acts of 1924, 1926, and 1928. If so, they were exempt from taxation, whether they were income or not. The Eisner Case dealt with an act (Revenue Act 1916, c. 463, § 2 (a), 39 Stat. 757) which attempted, unconstitutionally, to tax all stock divi-

dends. We are here dealing with Revenue Acts which expressly exempt all stock dividends from taxation. The question here is, not what Congress could tax, but what it has taxed.

Respondent cites Commissioner v. Tillotson Mfg. Co. (C.C.A.6) 76 F.(2d) 189, wherein it was held that a dividend paid in common stock of a corporation to holders of its preferred stock was not a stock dividend, within the meaning of the Revenue Act of 1926. We do not agree with that holding. It is based upon the erroneous assumption that, in exempting stock dividends from taxation, Congress intended only to exempt those which were already constitutionally exempt. There is no basis for any such assumption. Section 201 (f) of the Revenue Act of 1926 declares, without qualification, that a stock dividend shall not be subject to tax. The Tillotson decision, in effect, adds to this section the words, "provided such dividend is already constitutionally exempt from taxation." This proviso is not found in the Revenue Acts, and should not be added thereto by judicial construction.

We hold that the term "stock dividend," as used in the Revenue Acts of 1924, 1926, and 1928, embraces all stock dividends, including those paid in common stock of a corporation to holders of its preferred stock. Whether such dividends constitute income, it is unnecessary to decide. If they are not income, they are exempt from taxation under the Sixteenth Amendment. If they are income, they are still exempt by express provisions of these acts.

■ Respondent contends that, even though the common stock received by her constituted nontaxable stock dividends, it was nevertheless improper for the Commissioner to adjust the cost basis of her preferred stock by apportioning any part of it to the common stock so received. Her argument is that, under the Sixteenth Amendment, stock dividends of this particular type might have been taxed as income, and that, since they might have been so taxed, they could not be treated as other stock dividends are treated; namely, as merely constituting additional evidence of the stockholder's interest in the corporation.

Respondent's contention must be rejected. Assuming, without deciding, that Congress might constitutionally have taxed stock dividends of this type, we hold that

it was within the power of Congress to exempt such dividends from taxation and to treat them as other stock dividends are treated. That, we think, is what Congress did in the Revenue Acts of 1924, 1926, and 1928. In thereby exempting all stock dividends from taxation, Congress, in effect, declared that, for income tax purposes, such dividends, whether income or not, should be treated as merely constituting additional evidence of the stockholder's capital investment. If so treated when received, such dividends should be so treated, for the purpose of determining gain or loss, when a part of the capital investment is sold or otherwise disposed of.

■ These and other stock dividends were so treated in Treasury Regulations 74, which were in effect when respondent's preferred stock was redeemed and when her 1930 income tax return was filed. Article 58 of Regulations 74 provides: " * * * In the case of stock in respect of which any stock dividend was paid, the basis for determining gain or loss from a sale of a share of such stock shall be ascertained in accordance with the principles laid down in article 600. * * *"

Article 600 provides:

"In the case of stock or securities acquired by a shareholder after December 31, 1923, in connection with a transaction [distribution of stock on reorganization] described in section 112 (g) and article 576, the basis in the case of the stock in respect of which the distribution was made shall be apportioned between such stock and the stock or securities distributed to the shareholder. The basis for the old and new shares shall be determined in accordance with the following rules:

"(1) Where the stock distributed in reorganization is all of substantially the same character or preference as the stock in respect of which the distribution is made, the basis of each share will be the quotient of the cost or other basis of the old shares of stock divided by the total number of the old and new shares.

"(2) Where the stock distributed in reorganization is in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made, the cost or other basis of the old shares of stock shall be divided between such old stock and the new stock in proportion, as nearly as may be, to the respective values of

each class of stock, old and new, at the time the new shares of stock are distributed, and the basis of each share of stock will be the quotient of the cost or other basis of the class with which such share belongs, divided by the number of shares in the class."

Article 628 of Regulations 74 provides: "The issuance of its own stock by a corporation as a dividend to its shareholders does not result in taxable income to such shareholders, but gain may be derived or loss sustained by the shareholders from the sale of such stock. The amount of gain derived or loss sustained from the sale of such stock, or from the sale of the stock in respect of which it is issued, shall be determined as provided in articles 561 and 600."

These Regulations were consistent with the Revenue Act of 1928, under which they were promulgated, and were, in our opinion, valid regulations. They were followed by the Commissioner in adjusting the cost basis of respondent's preferred stock. That adjustment was proper and should have been upheld.

Though not directly in point, the following cases have some bearing on the questions we have considered and are in accord with the views herein expressed: Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 253, 42 S.Ct. 483, 66 L.Ed. 923; Beckers v. United States (Ct.Cl.) 42 F.(2d) 300, 301; Hewes v. Eaton (D.C.Conn.) 39 F.(2d) 917, 919; Ayer v. Blair, 58 App.D.C. 110, 25 F.(2d) 534, 535; Towne v. McElligott (D.C.S.D.N.Y.) 274 F. 960, 962.

The decision of the Board of Tax Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

DENMAN, Circuit Judge.

I dissent. The opinion of Judge Allen in Commissioner v. Tillotson Mfg. Co. (C.C.A.6th) 76 F.(2d) 189, sustaining the Board of Tax Appeals there, disposes of an analogous case. The same claim that Treasury Regulations supported the Commissioner's assessment was made in that case. I consider her conclusion, contrary to the prevailing opinion here, is correct. It is supported by the decisions of the Supreme Court in Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520, and Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 69 L.Ed. 1079, discussed infra with regard to physical severance from capital in a corporate dividend, as necessary to constitute income. The decision of the Board of Tax Appeals here should be sustained.

I am unable to concur in the majority opinion that there is any question in this case "whether the common stock received by respondent as dividends on her preferred stock did or did not constitute stock dividends." It seems obvious that the distribution of a share of common stock to the holders of the preferred under provisions of the charter of this corporation constitutes a stock dividend. It is a dividend and it is stock.

Nor can I agree with the prevailing opinion that it is a matter of indifference whether the stock dividend in this case, if entirely different in character from the stock on which it was declared, is or is not income. If it is income from the original stock investment, it is not a return of capital. The majority opinion's interpretation would have Congress attempting to tax *capital* by the device of deducting from capital cost *income* produced from capital in determining the gain on the sale of the stock representing the original investment. The constitutional amendment allowing the taxation of *income* created no such right in Congress, and what we are here considering is an income tax.

To support such an attempt by Congress requires the implication that no stock dividend can be taxed even though essentially different in kind from the prior stock holding. A very wide field of income taxation would be removed from the federal government.

Hence I cannot concur in the majority's statement that, in "exempting all stock dividends from taxation, Congress, in effect, declared that, for income tax purposes, such dividends, whether income or not, should be treated as merely constituting additional evidence of the stockholder's capital investment. If so treated when received, such dividends should be so treated, for the purpose of determining gain or loss, when a part of the capital investment is sold or otherwise disposed of."

Such treatment requires income to be treated as a return of capital. Nothing appears in the language of the taxing statute to warrant such an implied intent of Congress, nor is any implication

permissible other than that, if the dividend stock is income, Congress intended to wait until it was sold for its tax on such income. If this were not so patent, it is obvious that here there is at least an ambiguity, and the construction most favorable to the taxpayer in determining the instant tax, claimed to be created by the legislation, should prevail. McFeely v. Commissioner, 296 U.S. 102, 111, 56 S.Ct. 54, 80 L.Ed. ——. Furthermore, applying this rule of construction in favor of the instant taxpayer extends rather than contracts the Congressional area of taxation.

1. *Taxpayer's common stock dividend, essentially different from the preferred on which it is declared, constitutes income. When added to the preferred, it is not a mere splitting of shares showing an identical interest in the corporate capital.*

What the Commissioner seeks to tax is the taxpayer's gain from the sale of her preferred. He claims that the cost of the preferred should be apportioned between the preferred stock and the several common stock dividends received in years prior to the sale of the preferred. Obviously, if the dividend on the preferred had been in cash or in other personal property, different in kind from the preferred, the apportionment should not be made.

The question is whether or not the common stock dividend issued on taxpayer's preferred stock interest is a mere splitting of the certificates of preferred stock into a greater number of smaller units, so that the preferred and common aggregate a stock interest in the company substantially the same as before the dividend. If it is such a mere splitting of certificates, taxpayer has made no gain. She has received nothing but a changed evidence of her capital interest, and the cost of her preferred should be apportioned as claimed by the Commissioner.

If, on the other hand, the common stock is entirely different in character from the preferred and, when added to taxpayer's preferred holding, created an interest in the corporation entirely different from and more than that of her preferred before the dividend, then she has made a gain of something different from the preferred. That gain is just as much income to her as if it were in cash.

If it be argued that, while holding her preferred, taxpayer was holding the possible dividends in common stock, and hence, when the common was distributed, she had no more than she had before, the answer is that in the same way she held the possible dividends in cash, and hence a cash dividend would be but a return of capital. If such a fallacious argument be applied, the cash dividend would not be taxable as income, but would merely reduce the purchase price of the preferred in determining a gain on its sale.

In this case, taxpayer's common stock dividend differed from her preferred in two essential respects: (1) It represented an interest in the corpus of the corporate capital differing in kind and extent from the preferred. (2) It carried with it voting rights, whereas the preferred stock had none. Further, (3) the common dividends varied in amount in different issues, so that preferred holders of a later date of acquisition received a different proportion of voting power and different interest in the corporate capital from those of an earlier date.

The radical difference between the preferred stock and the common stock is obvious from the inspection of that portion of the company's charter creating the stock. To use the language of Eisner v. Macomber, 252 U.S. 189, 208, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570, "certainly the interest of the stockholder is a capital interest." The charter limited the preferred's interest in the capital to the par value of $100, and an accumulated unpaid 7 per cent. per annum thereon. The dividends on the preferred, at the option of the directors, are payable either in cash or a common stock theoretically representing a $7 interest in the corporate capital. The dividend common, after distribution, has its $7 nominal valuation reduced or increased as the company's capital rises or falls in value. The preferred does not change. On final liquidation of the corporation, the preferred comes first with its par and accumulated unpaid cash dividends. The issued common takes all the remaining reservoir of capital, whether diminished by loss or increased by profitable capital sales, profits of operation, or the increased value of capital assets.

In no sense can the kind of personal property received by the taxpayer in

this common stock be said to resemble the kind of property represented by her preferred stock. This is true whether we regard the stock as constituting an interest in the corpus of the company's capital or merely an expectancy of a participancy, definitely framed in the charter, in its capital assets. If expectancy is the correct description of the kind of property there is in common stock, the constant sales at large profits and losses of this expectancy in the great stock exchanges demonstrate it to be personal property of great value.

The preferred stock gave the taxpayer no participancy in the management of the corporation. All the voting rights were in the common stock. While it is true that to the average stockholder in great corporations this right of voting participancy in the management is infrequently exercised, in many cases it is of great value to the stockholder. Certainly, considering the insistence of our courts on the significance of this right, when actually misused or thwarted in its exercise, it would be improper for us to hold the voting right a negligible factor in determining the character of personal property in stock.

The original issues of stock of the company were made at different dates and consisted in (1) no-par common promotion stock without preferred; (2) blocks of 1 share preferred and 2 shares of common; (3) blocks of 1 share of preferred and 5 shares of common; (4) blocks of 1 share preferred and 50 shares of common.

At the time of each new issue of common, the corporate surplus exceeded the aggregate of the debit to surplus, charged because of the issue.

The purchasers of blocks of common and preferred were not required to hold them in blocks or at all. The stock was sold on the stock market. Each holder of common, original, or transferred had his interest in the residue of the surplus value after the preferred interest and also his voting power changed by each issue of common thereafter.

Taxpayer purchased on February 28, 1924, 15 blocks of 1 share of preferred and 5 common. On this preferred she received a common dividend of 127 shares on January 31, 1925. This altered her prior common interest in the surplus and her voting power with a variable determined in part by the prior issue of common without preferred which received no dividend. On January 30, 1926, there was another common dividend affecting her prior held common with a similar variable. On March 22, 1926, she purchased 15 blocks of 1 preferred and 50 common. This common altered her prior common interest in the surplus and her voting power with a similar variable. There were two subsequent common dividends, each of which affected her prior common holding by such a variable.

The above assumes that taxpayer held all her common through these transmutations of her interest. There is no evidence that she did. If, as she well could, she sold part of her common, then, on receiving the common dividend, the variable in her interest in the surplus capital contains different factors. In any possible retention or disposition of the prior held common, the lack of identity of her stock interest before and after the stock dividend is demonstrable.

We thus see that in no sense could either Mrs. Koshland's voting power or interest in corporate capital be deemed the same after a common stock dividend was issued to her as it was before. The effect of the common dividend was to increase both her interest or expectancy in the company's capital and to change her voting power in its management.

With regard to a difference of stock character arising from her increased voting power, the case of Chapman v. United States, 63 Ct.Cl. 106, certiorari denied 275 U.S. 524, 48 S.Ct. 18, 72 L.Ed. 406, is not an adverse decision. In that case the holder of common stock with a voting right received a dividend of common stock of exactly the same character but without the voting right. Since the common stock was identical in its interest or expectancy in the corporate capital, and since, when received, by the stockholder, he had exactly the same voting rights as before, it is plain that what he received was a mere dilution in share numbers of the same property. The situation is entirely different where one who has had no voting power in his preferred receives that valuable right through the common stock dividend. His position is changed with reference to his power to control the corporate management.

2. *Physical severance from the corporate capital not necessary in order that*

*a dividend constitute income. Congress is not deprived of the power to tax dividend stock, differing in kind from the stock on which it is declared,* by Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, *as construed in* Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 69 L.Ed. 1079.

The fundamental question here is whether or not certain language of Eisner v. Macomber, suggesting that no stock dividend could be income because it detached nothing from the corpus of the company's property, must be projected beyond the facts presented in that case. Must it be deemed to apply to dividends of stock not identical with the stock on which the dividend is declared and which, under no theory, could be regarded as a mere splitting of stock certificates, leaving the stockholder with a personal property, identical in its value and character, with what he had before the dividend?

There were four justices dissenting in Eisner v. Macomber, and, while this does not change the binding character of the majority opinion, it suggests that the rule, particularly in constitutional cases, that a decision shall not be extended beyond the issues of fact upon which the adjudication rests, should be more certainly applied. As was said in Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899: "This court * * * has no jurisdiction to pronounce any statute, either of a state or of the United States, void * * * except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. These rules are safe guides to sound judgment. It is the dictate of wisdom to follow them closely and carefully." Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176; German Alliance Ins. Co. v. Homewater Supply Co., 226 U.S. 220, 234, 33 S.Ct. 32, 57 L.Ed. 195, 42 L.R.A.(N.S.) 1000; Howat v. Kansas, 258 U.S. 181, 184, 42 S.Ct. 277, 66 L.Ed. 550; Taylor v. Voss, 271 U.S. 176, 184, 46 S.Ct. 461, 70 L.Ed. 889.

The ratio decidendi of Eisner v. Macomber, in my opinion, is expressed in the following excerpts from the opinion:

"The proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same *proportional interest* that the original shares represented before the issue of the new ones. * * * What has happened is that the plaintiff's old certificates have been split up in effect and have diminished in value to the extent of the value of the new. [Italics ours.] * * *

"It does not alter the preexisting proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate holdings of the other stockholders as they stood before. The new certificates simply increase the number of the shares, with consequent dilution of the value of each share." Eisner v. Macomber, 252 U.S. 189, 203, 211, 40 S.Ct. 189, 191, 64 L.Ed. 521, 9 A.L.R. 1570.

At another part of the opinion it is stated that the stockholder has no gain because "there has been no segregation of profits, nor has he any separate certificate representing a personal gain, since the certificates, new and old, are *alike* in what they represent—a capital interest in the entire concerns of the corporation." (Italics inserted.)

It may be that the latter statement can be reasoned to apply only to certificates which are *"alike"* in what they represent and not to certificates as unlike as those here in question.

If these words mean that the acquisition by the stockholder of an entirely different interest or expectancy in the corporate property cannot be regarded as income because none of the corporate property has been severed, it is submitted they are but dicta. If the dicta be law, we repeat that Congress is without power to tax as income newly acquired personal property, different in character and incidents from the capital from which it is derived, truly regarded by the recipient as an addition to his income. If the criterion determining whether a stock dividend is income is that the recipient has received something detached from the corporate capital, then a gift by the cor-

poration of its corporate stock is beyond the taxation of Congress. The recipient has received nothing from the corporation's assets that he did not have before, and another area of taxation is shut off from the Congress.

As stated, the majority opinion in this case is in clear conflict with the decision of the Circuit Court of Appeals for the Sixth Circuit in Commissioner of Int. Rev. v. Tillotson Mfg. Co., 76 F.(2d) 189. Judge Allen's able opinion treats Eisner v. Macomber as requiring a double test for determining whether the stock dividend is income within the meaning of the Sixteenth Amendment to the Constitution. Her view is that a stock dividend is income unless the stock presents both (1) no severance of the corporate assets and (2) no identity of resultant interest or expectancy in the corporate property. The reasoning is that, unless both tests are satisfied, the stock dividend is income. In reaching the same result, I prefer to regard the language of Eisner v. Macomber with reference to the necessity for a severance of corporate property, if intended as such a test of income, as dicta not conceived in the presence of the facts of this case.

This interpretation of Eisner v. Macomber is sustained by the subsequent decisions of the Supreme Court. In Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520, the assets of the corporation were transferred to a new corporation, and thereupon identical stock interests in the assets were created and the stock issued to the stockholders of the first corporation. The result of the transaction was that each stockholder had the same proportionate interest or expectancy in the corporate assets as he had before the transfer. The Supreme Court held that the transfer of the assets to a new corporation and the stock dividend declared by the new entity placed the stockholder in no different position than if a dividend of identical stock had come from the old corporation. There was no income to the holder of the new shares from the second corporation within the meaning of the Sixteenth Amendment.

In Marr v. U. S., 268 U.S. 536, 540, 541, 542, 45 S.Ct. 575, 69 L.Ed. 1079, the assets were transferred to a new corporation of another state whose laws made the stock issued to the old stockholders of a different character from that held in the first corporation. This stock, because of its difference in character, was held to be income, and the tax thereon was sustained by the decision. The difference between the Weiss Case and the Marr Case is not that the new corporation in the one case was incorporated in the same state and the other in a different state. If the second charter in the Marr Case had been so drawn that the stock distributed had given the distributee identical voting power and capital expectancy, the decision would have been the same in the latter case as in the Weiss Case.

In the Marr Case the Supreme Court distinguishes Eisner v. Macomber, and Weiss v. Stearn in the following language:

"In Eisner v. Macomber and in Weiss v. Stearn, where the additional value in new securities was held not to be taxable, the identity was deemed to have been preserved. In Eisner v. Macomber the identity was literally maintained. There was no new corporate entity. The same interest in the same corporation was represented after the distribution by more shares of precisely the same character. It was as if the par value of the stock had been reduced, and three shares of reduced par value stock had been issued in place of every two old shares. That is, there was an *exchange of certificates but not of interests.* In Weiss v. Stearn a new corporation had, in fact, been organized to take over the assets and business of the old. Technically there was a new entity; but the corporate identity was deemed to have been substantially maintained because the new corporation was organized under the laws of the same State, with presumably the same powers as the old. There was also no change in the character of securities issued. By reason of these facts, the proportional interest of the stockholder after the distribution of the new securities was deemed to be exactly the same as if the par value of the stock in the old corporation had been reduced, and five shares of reduced par value stock had been issued in place of every two shares of the old stock. Thus, in Weiss v. Stearn, as in Eisner v. Macomber, the transaction was considered, in essence, an exchange of certificates representing the same interest, not an exchange of interests.

"In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey. Because of these inherent differences in rights and powers, *both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new*. But there are also adventitious differences, substantial in character. A 6 percent. non-voting preferred stock is an essentially different thing from a 7 percent. voting preferred stock. A common stock subject to the priority of $20,000,000 preferred and a $1,200,000 annual dividend charge is an essentially different thing from a common stock subject only to $15,000,000 preferred and a $1,050,000 annual dividend charge. The case at bar is not one in which after the distribution the stockholders have the same proportional interest of the same kind in essentially the same corporation." (Italics inserted.) Marr v. United States, supra, 268 U.S. 536, at pages 540, 541, 542, 45 S.Ct. 575, 69 L.Ed. 1079.

The essence of the distinction between the Weiss and Marr Cases is that in the latter the stockholder as a result of the stock dividend gets something more than a mere "exchange of certificates but not of interest." The stock is taxable because "both the preferred and common stock of the old corporation is an essentially different thing from the stock of the same general kind in the new"; that is to say, with reference to the case at bar, the common stock with voting rights is something essentially different and new both as to capital expectancy and voting power from the preferred stock without voting rights.

That the decision of the court does not regard the language in Eisner v. Macomber relative to the necessity for a severance of the corporate assets from the corporation and their acquisition by the stockholders as controlling the question whether the stock dividend is income is even more clearly apparent from the dissent of four of the justices. They support their contention that the new stock was not income in the following language: "The business and assets were not materially changed, and the stockholder received *nothing actually severed from his*

*original* capital interest—nothing differing in *substance* from what he already had." (Italics inserted.)

The word "substance" is interpretable as applying to the dividend *stock* as differing in substance from what the stockholder already had, in which event the dissent would regard the common in this case as income because it differs from the preferred in the substance of its interest in the corporation. It is difficult to make such an interpretation, since the dividend stock in the Marr Case also differed from the original stock in the interest created in the corporate assets. I regard the dissent as asserting that severance of corporate assets is necessary to create income; thus confirming my conviction that the majority holds severance unnecessary.

It is my opinion that the tax on the profit from the sale of Mrs. Koshland's preferred stock was properly determined by assigning none of its purchase price to her common stock dividend and that the decision of the Board of Tax Appeals should be sustained.